Sylvester WILLIAMS *v.* STATE of Arkansas

CA CR 88-94                                      760 S.W.2d 71

Court of Appeals of Arkansas
En Banc
Opinion delivered November 16, 1988

*Bradley, Coleman & Davidson,* by: *Scott Davidson,* for appellant.

*Steve Clark,* Att'y Gen., by: *R.B. Friedlander,* Solicitor General, for appellee.

Donald L. Corbin, Chief Judge. This appeal comes to us from Craighead County Circuit Court. Appellant, Sylvester Williams, appeals his conviction of theft by receiving, and the fine imposed therefor. We affirm.

A felony information was filed February 13, 1987, charging appellant with theft by receiving, a violation of Arkansas Code Annotated § 5-36-106 (1987) (formerly Ark. Stat. Ann. § 41-

2206 (Repl. 1977)). The information alleged that appellant did unlawfully receive numerous articles of jewelry and a pair of binoculars having a value in excess of $2,500.00 having good reason to believe that the property was stolen. Appellant was tried by a jury on October 30, 1987, and found guilty as charged. A sentence in the form of a $10,000.00 fine was imposed. From the judgment of conviction comes this appeal.

For reversal, appellant raises two points: (1) The trial court erred in its ruling against the defendant's motion to suppress evidence since the search and seizure violated the defendant's rights protected by the fourth and fourteenth amendments to the United States Constitution and article two, section fifteen of the Arkansas Constitution; and (2) there was insufficient evidence to support the jury's verdict.

Where the sufficiency of the evidence is challenged on appeal of a criminal conviction, the appellate court must review the sufficiency of the evidence prior to consideration of trial errors. *McCraw* v. *State*, 24 Ark. App. 48, 748 S.W.2d 36 (1988). However, the defendant must raise the issue of sufficiency of the evidence to the trial court. Appellant failed to move for a directed verdict either at the close of the State's case in chief or at the close of all evidence. It is well settled that an appellate court will not consider errors raised for the first time on appeal, with certain exceptions not applicable here. *See, Hughes* v. *State*, 295 Ark. 121, 746 S.W.2d 557 (1988). Although we are not required to consider the sufficiency issue, we have reviewed the abstract of the testimony and cannot conclude that the evidence was insufficient to sustain the jury verdict.

Appellant also argues that the trial court erred in denying his motion to suppress evidence allegedly obtained through an unlawful search and seizure.

The record of the hearing on the motion to suppress reflects that on the evening of February 12, 1987, the Jonesboro City Police received a phone call from Tom Fleming. The investigating officer, Rusty Grixby, testified that Mr. and Mrs. Fleming reported seeing "a Ranchero, different colors, loud exhaust, that had trash bags in back of it," on Vine Street. They reported that at least two black males were in the vehicle and that one of the males got out when the vehicle turned onto Poplar. They

described the male to the police including his clothing and testified that they saw him again on the east side of the house at 824 Vine carrying a laundry basket that had items in it which looked suspicious to them. Officer Grixby radioed the police dispatcher and advised him to be on the lookout for the vehicle described.

Officer Ansel Gines testified that he received a call from the dispatcher to be on the lookout for a 1966 red and white Ford Ranchero that was supposed to be occupied by three black males. Officer Gines testified that he was told the occupants were possible suspects for burglaries in the area of Vine and Poplar Streets. The record reflects that Officer Gines encountered a vehicle of that description with three black males inside and began following it. The driver of the red and white Ranchero pulled into the driveway of a vacant house and stopped of his own accord. Officer Gines pulled in behind the vehicle and stopped. The driver of the Ranchero exited his vehicle and walked back toward the patrol car. Officer Gines told the driver, appellant herein, to return to his vehicle and he did so. Officer Gines testified that he returned to his vehicle to radio in his position and while doing so, the two passengers in the vehicle exited and fled on foot. Appellant remained in the vehicle. Officer Gines then approached the Ranchero and using a flashlight, looked into the bed of the vehicle where he saw an open binocular case with two gold watches and other jewelry beneath the binoculars. Officer Gines asked appellant if the items belonged to him and appellant did not answer. He then placed appellant in his patrol car and went back to the Ranchero for another look. Officer Gines testified that he never touched anything and that the items were eventually seized by another officer who arrived on the scene.

■■ Appellant contends that the actions by the officers constituted an unlawful search and seizure. It is well established that warrantless searches of automobiles may be reasonable when, under the same circumstances, a search of a home, place of business or other structure would not be because of the mobility of the automobile and the diminished expectation of privacy in an automobile. *Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980). Whenever a police officer has reasonable cause to believe that contraband is being unlawfully transported in a vehicle, that vehicle may be the object of a warrantless search, but the right to

search and the validity of the search are dependent upon the reasonableness of the cause the searching officer has for believing that the contents of the automobile offend against the law. *Rowland v. State*, 262 Ark. 783, 561 S.W.2d 304 (1978).

Although appellant puts much emphasis on the fact that the communications to Gines through the dispatcher were not sufficient to establish probable cause on which to stop appellant, we need not reach that issue since appellant voluntarily stopped his vehicle. Appellant testified that he voluntarily stopped his vehicle to find out why the officer was following him, despite the fact that the officer never turned on his blue lights or siren.

It is also argued that requiring appellant to return to his vehicle was violative of his rights. There is no requirement that an officer have probable cause to inquire of a person who voluntarily encounters the officer. Furthermore, Ark. R. Crim. P. 2.2(a) states: A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request. Thus, the issue before us is whether the officer had probable cause to search the voluntarily stopped vehicle.

We have said that although a stop for a traffic violation may not justify a vehicle search, other circumstances surrounding the stopping, together with facts becoming apparent to the officer after the stop has been made may afford probable cause to believe the vehicle contains contraband. *Perez v. State*, 260 Ark. 438, 541 S.W.2d 915 (1976). In such cases, given exigent circumstances, the right to search and the validity of the consequent seizure depend on the reasonableness of the cause the seizing officer has for believing that the contents of the automobile offend against the law. *Id*. The question is whether the facts available to the officer at the moment of the search would warrant a man of reasonable caution to believe that the action taken was appropriate. *Id*.

The facts becoming apparent to Officer Gines after the vehicle had voluntarily stopped provide probable cause for the search in the case at bar. As previously stated, while attempting

to reach his dispatcher on his radio, the two passengers in the vehicle with appellant fled the scene. Flight from the scene to avoid arrest has long been held evidence of felonious intent. *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981). *See also, White* v. *State*, 271 Ark. 692, 610 S.W.2d 266 (1981). Furthermore, probable cause is evaluated by the courts on collective information of the police, and not merely on the personal knowledge of the officer making the decision. *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978). The conduct of the passengers, considered in light of the collective information of the police, including the officer who arrived on the scene prior to the seizure, was sufficient to warrant a prudent police officer in the exercise of common sense to arrive at the honest judgment that an offense had been or was being committed.

■ The search was valid if it was not reasonable to obtain a search warrant. *Jackson* v. *State*, 266 Ark. 754, 585 S.W.2d 367 (1979), *cert. denied*, 444 U.S. 1017 (1980). The circumstances of the case, coupled with the fact that it occurred late at night made it impractical to obtain a warrant. Since we find the warrantless search to be reasonable, the judgment is affirmed.

Affirmed.

COOPER and JENNINGS, JJ., concur.

MAYFIELD, J., concurs.

JAMES R. COOPER, Judge, concurring. I concur with the result in this case, but I believe that the officer's initial encounter with the appellant was not a "stop," but was a request for information in accordance with A.R.Cr.P. Rule 2.2(a). That rule provides:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime.

The Supreme Court explained in *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982), that this authority to approach citizens must be reasonable under the circumstances existing at the time and must be weighed against the individual's right to privacy and personal freedom. Consideration is to be given to the intensity of the interference, the gravity of the alleged crime, and the

circumstances surrounding the encounter. *Id.*

At the time the appellant encountered Officer Gines, the Flemmings had told Officer Grixby that they had seen a red and white Ranchero with a loud muffler in the neighborhood and that it was unfamiliar. They stated that they saw a person get out of the vehicle and that the next time they saw him, he was by the side of a nearby house carrying a box or laundry basket. The officers testified that a red and white Ranchero was not commonly seen in the Jonesboro area. Because the activities of the occupants of the vehicle were suspicious enough to alarm the neighbors and because the vehicle was unique, the police officers were justified in requesting information from the appellant. I also wish to point out that the appellant voluntarily stopped his vehicle; he was not "stopped" by the police. The officer did not intrude to any large degree on the appellant's privacy; he merely followed him.

Furthermore, I think the majority goes farther than it needs to in labelling the officer's discovery of the binocular case and jewelry a "search." The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. *Katz* v. *United States*, 389 U.S. 347 (1967). In determining whether a search has occurred, the central inquiry is whether the conduct of the police violated the privacy upon which the individual had justifiably relied. *Id.* This inquiry normally embraces two questions: (1) whether the individual, by his conduct, has exhibited an actual expectation of privacy, and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Smith* v. *Maryland*, 442 U.S. 736 (1979).

In the present case, the appellant's vehicle was just off a public street, in the driveway of a vacant house. The jewelry which was later seized was found in an open binocular case underneath a pair of binoculars where the jewelry could easily be seen in the bottom of the case. The case was lying in the open bed of the Ranchero on top of several bags of trash and old clothes. Although the officer did shine a flashlight into the bed of the vehicle, he stated that he did not move or touch anything. The fact that the officer used a flashlight to enhance his vision does not bring his actions into the category of a Fourth Amendment

search. *See Texas* v. *Brown*, 460 U.S. 730 (1983); *United States* v. *Lee*, 274 U.S. 559 (1927). The appellant in this case had no legitimate expectation of privacy and I simply do not believe that this was a search within the meaning of the Fourth Amendment.

I turn now to the issue of the officers' seizure of the binocular case. The seizure could not be valid under the "plain view doctrine" because it was not readily apparent that the binocular case and jewelry were of an incriminating nature. *Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987). The owner of the jewelry stated that except the two watches, most of it was ordinary costume jewelry. *See Smith* v. *State*, 265 Ark. 104, 576 S.W.2d 957 (1979). Furthermore it is difficult to say that the discovery was inadvertent because Officer Gines stated that when he shone the flashlight into the bed of the Ranchero he was looking for the fruits of a crime. This cannot be considered a seizure pursuant to a valid arrest either because it is not clear at what point the appellant was actually arrested. When the officer shone his flashlight into the bed of the vehicle, the appellant was in the driving compartment. However, Officer Gines had placed the appellant in the back of the police car prior to the seizure of the binocular case.

Objects found in a public place, or a place where there is no reasonable expectation of privacy, do not implicate Fourth Amendment concerns, and, given probable cause to associate the property with criminal activity, the property may be seized. *Payton* v. *New York*, 445 U.S. 573 (1980). Under *Payton*, even where the Fourth Amendment prohibition of unreasonable searches is not implicated, where private property is seized, officers must have probable cause to associate the property with criminal activity. Probable cause, in this context, is a belief that there is a "practical, nontechnical probability that incriminating evidence is involved," i.e., a particularized suspicion, and does not require a showing that such belief is "correct or more likely true than false." *Texas* v. *Brown*, 460 U.S. 730 (1983).

Officer Gines stated that he believed the appellant to be a suspect in a burglary. When the appellant stopped his vehicle and got out, the other two occupants fled while Officer Gines was using his radio. When Officer Gines asked the appellant about the ownership of the property, the appellant did not respond. Al-

though there was testimony from Officer Mashburn that there was nothing inherently suspicious in the items themselves, Officer Gines did state that he deemed it suspicious because the jewelry was stuffed into the bottom of the binocular case, underneath a pair of binoculars and the case was in the open bed of the Ranchero among other items that were obviously trash. Based on the totality of the circumstances, I believe that the officers had probable cause to take possession of the binocular case and jewelry in order to determine their true ownership. *See Munguia v. State*, 22 Ark. App. 187, 737 S.W.2d 658 (1987).

Although I have some serious reservations about the legality of the appellant's arrest, that issue was not presented to the trial court, nor was it argued on appeal.

I concur in the result reached by the majority.

JENNINGS, J., joins in concurrence.