Craig Keith HILLARD *v.* STATE of Arkansas

CR 94-238 900 S.W.2d 167

Supreme Court of Arkansas
Opinion delivered June 12, 1995

*Etoch Law Firm*, by: *Charles E. Halbert, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll* and *J. Brent Standridge*, Asst. Att'ys Gen., for appellee.

TOM GLAZE, Justice. Appellant Craig Keith Hillard appeals from a jury verdict convicting him of two counts of murder. He was sentenced as a habitual offender to two terms of life without parole. Hillard asserts five points for reversal.

Hillard first argues his attorney was not qualified under state law to represent him in a capital murder case. Charles E. Halbert, Jr. was appointed to defend Hillard on January 1, 1993, and Halbert, one day before trial, on November 8, 1993, informed the trial court that, pursuant to Act 1193 of 1993, the Arkansas Public Defender Commission had drafted standards for attorneys who could practice as a public defender. He conceded to the trial judge that he did not meet most of the qualifications established

by the Commission. *See* § 11(a)(2) of Act 1193 [compiled as Ark. Code Ann. § 16-87-203(2) (Supp. 1993)].[1] The trial court denied Halbert's motion for new or additional counsel, stating that Act 1193 has no bearing on Halbert's appointment since he was appointed long before Act 1193 went into effect. The trial court also ruled that it would not be proper to bring in extra counsel one day before trial.

■■ Hillard's argument seems to be one of claiming ineffective assistance of counsel, but he merely mentions his counsel's failure to meet unabstracted and unspecified standards he claimed had been "drafted" by the Arkansas Public Defender Commission. This court has held that ordinarily we do not consider a charge of ineffectiveness when a case is first appealed because the facts relevant to that issue have not been developed. However, when the proof is presented at a hearing on a motion for a new trial, economy of procedure would require a single appeal of all the issues. *Missildine* v. *State*, 314 Ark. 500, 863 S.W.2d 813 (1993). In the present case, Hillard offered no such proof or motion for new trial, raising an ineffective counsel issue. Nor can we find where the matter was fully developed at any other stage of trial. As a consequence, we reject Hillard's first point.

Next, Hillard contends the trial court erred in calling two witnesses to testify at the suppression hearing. Before calling these witnesses, Officer Ronnie White had testified that he had obtained consent from Ameila Anderson to enter her mother's apartment where the officers found Hillard's blue duffel bag that contained two .38 caliber revolvers — one a Smith and Wesson and the other a Charter Arms. The Smith and Wesson had been taken during the robbery and homicides with which Hillard was later charged and the Charter Arms was later identified as being the likely revolver used during the robbery and killings. After White's testimony, the state rested, but the trial judge asked if the presence of Ameila Anderson and her mother, Betty Sue Webster, could be obtained so the judge could ask them questions. Anderson and Webster appeared that same day, and by his questioning, the judge confirmed White's earlier testimony that the two women

---

[1] Act 1193 went into effect on July 1, 1993.

had consented to the officers' search of Webster's apartment and Anderson's bedroom in the apartment where Hillard also stayed. Hillard complains on appeal that the judge left his judicial role when he called and questioned the women as witnesses and became an advocate on behalf of the state. At trial, Hillard's actual objection appeared to question the judge's having opened the case after the state had rested.

 We point out that this court has held that the case-in-chief may be reopened for the taking of additional evidence and such a matter is committed to the discretion of the trial court. *Beck* v. *State*, 317 Ark. 154, 876 S.W.2d 561 (1994). In addition, A.R.E. Rule 614 authorizes the trial court on its own motion to call and interrogate witnesses. Here, the trial court asked questions designed merely to confirm testimony previously given by Officer White. Both Hillard and the state were afforded ample opportunity to inquire of the two court-called witnesses as well. In these circumstances, we cannot conclude the trial judge abused his discretion in any way.

██ Hillard's third argument concerns the trial court's questioning of Ameila Anderson during the same pretrial suppression hearing just discussed. The trial judge asked Anderson if she could have used Hillard's duffel bag which the police found in her bedroom and could she have placed something in the bag, if she had wanted. Hillard objected, stating the question called for speculation. On appeal, however, Hillard cites no legal authority nor offers convincing argument explaining how Anderson's answer was speculative. Specifically, he does not explain why Anderson's answer could not have been based upon factors within her own knowledge. Her response was that "If I needed to use it [I could have], but I didn't." In sum, Hillard simply fails to show any error.

In his fourth point, Hillard expands on his second and third arguments by arguing the suppression testimony given by Anderson was insufficient to support the search and seizure of Hillard's duffel bag and contents found in Webster's apartment. In particular, Hillard urges that, while Anderson (and Webster) had consented to search the premises, Anderson did not have actual or apparent authority to consent to search Hillard's bag. We disagree.

44

■ *United States* v. *Matlock*, 415 U.S. 164 (1974), is factually similar to the case before us. Matlock lived with Mrs. Graff in a house leased by Mrs. Graff's mother. Police officers suspected Matlock committed a robbery, and they asked Mrs. Graff if they could search the house. She consented to the search of the house, including the east bedroom on the second floor which she said was jointly occupied by Matlock and herself. In searching that bedroom, the officer found $4,995 in cash in a diaper bag in the room's only closet. The Court upheld the search, holding that, when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant (Matlock), but may show that permission to search was obtained from a third party (Mrs. Graff) who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *See Illinois* v. *Rodriguez*, 497 U.S. 177 (1990). Arkansas Rules of Criminal Procedure, Rules 11.2(c) and 11.3, are in accord. *See also Jacobs* v. *State*, 317 Ark. 454, 878 S.W.2d 734 (1994). The determination of third-party consent, like other factual determinations relating to searches and seizures, must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? *Rodriguez*, 497 U.S. at 188.

The present case is almost on all fours with *Matlock*. Hillard occupied a bedroom with his girlfriend, Ameila Anderson, whose mother, Ms. Webster, rented the apartment. It is unquestioned that Anderson had authority to consent to the search of the apartment, and she did so, giving officers *no limits or restrictions*. Anderson's mother also consented. Ms. Anderson showed the officers to the bedroom that she and Hillard occupied, and identified Hillard's blue duffel bag, which was unlocked and located on the bed they shared. In opening the bag, the officers found the two .38 caliber revolvers that subsequently were shown either to have been taken from or likely had been utilized in the robbery and murders. Like in *Matlock*, the officers' search should be upheld.

■ In sum, the record reflects the state established that Anderson had common authority, permitting her to authorize the officers to search the premises. Concerning the scope of the con-

sent given, both Anderson and her mother had common authority over the premises, and it is uncontroverted that they gave their unqualified and unrestricted consent to search the entire premises, including the room where Hillard's duffel bag was found. Anderson clearly stated that she gave the officers the right to search Hillard's as well as her things in the bedroom which they jointly shared. Whether Hillard actually authorized anyone to open or consent to the search of his bag is unimportant.

■ Finally, we consider Hillard's fifth point whereby he claims the trial court erred in denying his motion for a directed verdict. The trial court's ruling was correct. As discussed previously, Hillard's duffel bag was found which contained two .38 revolvers and other evidence connecting him with the robbery and homicides. One of the revolvers, a Smith and Wesson, matched the revolver which was taken during the course of the crimes in issue. Testimony was also admitted showing that two bullets taken from one of the victims could have come from the other Charter Arms .38 revolver found in Hillard's bag. A firearms specialist also stated that five expended Federal shell casings found in the officers' search of the Webster's premises had been fired from Hillard's Charter Arms revolver. In addition, Hillard drove a white Jeep Cherokee with Minnesota tags. On the date of the crime, a witness, Truett Rohscheib, saw Hillard's Jeep Cherokee parked in front of the liquor store where the robbery and double homicide took place. Anderson testified that, when she woke up on the day the crimes were committed, Hillard was gone from home. She said that Hillard later told her that he had shot the men at the liquor store because one of the men was going to shoot him. This evidence, alone, was sufficient to sustain Hillard's verdict.

The record has been examined pursuant to Ark. Sup. Ct. R. 4-3(h), and there is no error that has been identified that would warrant reversal.

Affirmed.