Carlos Anthony McFERRIN *v.* STATE of Arkansas

CR 00-922 42 S.W.3d 529

Supreme Court of Arkansas
Opinion delivered May 10, 2001

*John W. Cone*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Carlos Anthony McFerrin, was found guilty by a jury of felony-capital murder in connection with the aggravated robbery and death of Robert Branscum, the owner of Quality Liquor Store in Blytheville, Arkansas. As a habitual offender with two prior felony convictions, McFerrin was sentenced to life imprisonment in the Arkansas Department of Correction. Following his conviction, appellant filed the instant appeal. Our jurisdiction is authorized pursuant to Ark. R. Sup. Ct. 1-2(a)(2) (2000).

McFerrin raises four points in support of reversal. First, appellant contends that the trial court erred by denying his directed-verdict motion because substantial evidence did not support his

conviction. Second, he argues that the trial court erred by denying his motion to suppress evidence of $1,217.00 in cash seized from under a mattress during a warrantless search of his sister's home. Third, he claims that the trial court abused its discretion by admitting evidence of $1,400.00 in cash retrieved from under the backseat floorboard of Roy Green's car, where McFerrin was sitting before he was arrested. Fourth, appellant insists that the trial court erred by admitting the testimony of Greg Hayward, McFerrin's former Blytheville-jail cellmate. We find no merit·in appellant's arguments, and we affirm his judgment of conviction.

## I. Sufficiency of evidence

■ At the close of the State's case-in-chief and at the close of evidence, McFerrin moved for a directed verdict. The trial court denied the motions. On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Freeman v. State*, 331 Ark. 130, 131, 959 S.W.2d 400, 401 (1998) (citing *Williams v. State*, 329 Ark. 8, 16, 946 S.W.2d 678, 682 (1997)). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is any substantial evidence to support it, when viewed in the light most favorable to the State. *Freeman*, 331 Ark. at 131-32, 959 S.W.2d at 401.

■■ Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.* Notably, the evidence may be either direct or circumstantial. *Gillie v. State*, 305 Ark. 296, 301, 808 S.W.2d 320, 322 (1991). Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other "reasonable" conclusion. *Gillie*, 305 Ark. at 301, 808 S.W.2d at 322 (citing *Trotter v. State*, 290 Ark. 269, 719 S.W.2d 268 (1986)).

Here, McFerrin contends that the State failed to introduce any direct evidence that he was involved in Branscum's aggravated robbery and murder. He reasons that the State's evidence fails to place him at the crime scene and, at best, supports a theory of theft by receiving and hindering apprehension. Further, McFerrin argues that the jury had to resort to speculation to conclude that he participated in the murder because the circumstantial evidence introduced at trial was insufficient to sustain his conviction. In other

words, appellant maintains that another reasonable theory explained the evidence.

First, we must note that McFerrin fails to offer any authority in support of his position. We have long held that we do not consider arguments on appeal where it is not apparent without further research that the argument is well-taken. *Matthews v. State*, 327 Ark. 70, 938 S.W.2d 545 (1997). In any event, contrary to appellant's assertions, the State presented ample evidence for the jury to find McFerrin guilty of felony-capital murder.

Specifically, the State offered evidence that following the robbery of Branscum's store on September 4, 1999, almost $10,000 in cash and checks were missing. A nearby business owner heard gunshots at approximately 1:00 a.m. Between 1:00 a.m. and 2:00 a.m., McFerrin and Andrew Ross went to the home of Rosetta Ross, Andrew's aunt, where Andrew asked if she would take him to a hospital in exchange for $100.00. Andrew needed immediate medical attention for a gunshot wound to the groin that he received when he "got caught in the crossfire." According to Rosetta Ross, McFerrin acted "real nervous" and "scared."

At the hospital in Osceola, emergency-room attendants discovered that Andrew Ross had a ski mask in his pants leg. When Rosetta questioned McFerrin about the mask, he responded that Andrew "should have checked himself." McFerrin returned to his sister's home at approximately 3:00 a.m. Police discovered Branscum's body outside his store at about 6:00 a.m. on September 4, 1999. At approximately the same time, McFerrin went to Roy Green's house. According to Green's testimony, McFerrin told him that he and Andrew Ross had "hit a lick." Further questioning indicated that "hit a lick" meant that appellant had received money that was unexpected. Green explained that the phrase could mean that "you win at a card game or shooting dice or robbery."

After leaving Green's house, McFerrin, Green, and two others left in Green's car, and McFerrin purchased beer for everyone. When the group arrived at appellant's residence, his sister's home, the house was surrounded by police. McFerrin told Green to "keep going." However, the police stopped the car and arrested McFerrin. During a search of Green's car, police discovered $1,400.00 in cash on the floorboard where appellant was sitting. The search of appellant's sister's house revealed an additional $1,217.00 in cash hidden under a mattress. Significantly, the serial numbers on the bills from the money seized at the house coincided sequentially

with the serial numbers for some of the bills found in the floor-board. Notably, McFerrin admitted that he was unemployed and had only recently been released from prison.

Appellant also made a statement to the police concerning certain items of physical evidence, including the location of two guns later linked to the crime. One gun was a .357 caliber handgun containing five expended shell casings that matched the bullets retrieved from Branscum's body. The other gun was determined to be a pistol that Branscum carried to work with him. Tests conducted by the State Crime Laboratory confirmed that Branscum's blood was on both guns.

 In response to the State's theory of the case, appellant suggests that the circumstantial evidence of the cash coupled with Green's statement that McFerrin had "hit a lick," or got money that he did not expect, was equally likely to mean that he won at a card game or shooting dice rather than that he committed a robbery. However, appellant's argument is unpersuasive. We have long held that the trier of fact is free to believe all or part of a witness's testimony. *Freeman*, 331 Ark. at 134, 959 S.W.2d at 402 (citing *Mosley v. State*, 323 Ark. at 250, 914 S.W.2d at 734)). The credibility of witnesses is an issue for the jury and not for this court. *Marta v. State*, 336 Ark. 67, 74, 983 S.W.2d 924, 928 (citing *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998)). The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998). Moreover, we have held that a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993); *Bennett v. State*, 297 Ark. 115, 754 S.W.2d 799 (1988).

 In sum, we cannot say that appellant's explanation for the evidence provided the jury with a reasonable theory to explain its existence. The evidence presented by the State was sufficient to exclude appellant's theory that he was an innocent bystander who merely accepted cash from Andrew Ross and knew the location of two guns linked to the robbery and murder without having participated in the crime. Here, the jury need not have resorted to speculation or conjecture to find that appellant participated in the crime. Therefore, viewed in the light most favorable to the State,

we hold that substantial evidence supports appellant's conviction for felony-capital murder.

## II. Motion to suppress

Prior to his trial, appellant objected to the introduction of $1,217.00 in cash discovered under a mattress during a parole search of his sister's home. On appeal, McFerrin argues that the trial court erred by denying his motion to suppress the evidence because the search of his sister's home was invalid. In particular, appellant submits that the searching officers failed to request and receive consent prior to conducting the search and that the search did not comply with the release conditions he signed upon his parole from prison. The State contends that the trial court properly admitted the evidence or, alternatively, that the denial of the suppression motion was harmless. We agree.

As an initial matter, we note that appellant raises an additional objection on appeal, namely that the search was conducted without reasonable grounds. However, we will not address arguments raised for the first time on appeal when appellant failed to advance the issue to the trial court as part of a motion to suppress. *See, e.g., Stephens v. State*, 342 Ark. 151, 156, 28 S.W.3d 260, 262 (2000), *cert. denied*, 121 S. Ct. 1206. Accordingly, we limit our analysis to the issue appellant raised below, that the search was invalid in the absence of consent.

When an appellate court reviews a trial court's ruling on a motion to suppress, it makes an independent determination based upon the totality of the circumstances, views the evidence in the light most favorable to the State, and reverses only if the ruling is against the preponderance of the evidence. *Tabor v. State*, 333 Ark. 429, 433, 971 S.W.2d 227, 230 (1998). Here, we hold that trial court's ruling that the cash was discovered pursuant to a proper parole search was supported by a preponderance of the evidence.

As a general rule, "[a] warrantless entry into a private home is presumptively unreasonable." *Norris v. State*, 338 Ark. 397, 400, 993 S.W.2d 918, 920-21 (1999) (citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992)). The burden is on the State to prove that the warrantless activity was reasonable. *Id.*; *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). The presumption may be overcome if the law-enforcement officer obtained consent to conduct a warrantless search. Ark.

R. Crim. P. 11.1 (2000); *see also Hillard v. State*, 321 Ark. 39, 44, 900 S.W.2d 167, 169-70 (1995). For instance, we have held that a parolee's advance consent is valid because the parolee remains in the custody of the penal institution from which he is released, and the "special needs of the parole process call for intensive supervision of the parolee making the warrant requirement impractical." *Cherry v. State*, 302 Ark. 462, 467, 791 S.W.2d 354, 357 (1990).

In the instant case, Rebecca Somerall, appellant's parole officer, initiated a parole search of McFerrin's sister's home after receiving a report that McFerrin was considered a suspect in Branscum's murder. When Somerall arrived at the unoccupied house, she requested assistance from the Housing Authority to enter the residence. Once inside, police discovered $1,217.00 in cash, a .22 caliber handgun, and ammunition. Although the cash was admitted into evidence, the trial court excluded the handgun and ammunition.

At trial, Somerall admitted that she did not have a warrant but testified that she conducted the search pursuant to appellant's signed parole-release form containing the following condition:

> 10. Search and Seizure. You *must submit* your person, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant, *whenever requested to do so* by any Department of Community Punishment officer.

(Emphasis added.) Somerall also explained that she received prior consent to search from McFerrin's sister, Elizabeth Gray. Prior to appellant's release, Somerall informed Gray that if she permitted McFerrin to live in her home, it would be subject to search "24 hours a day, seven days a week without a warrant." According to Somerall, Gray agreed to that condition.

Appellant maintains that the prior consent was invalid because he was not present at the search and "requested" to comply with the search per his parole condition. However, as the State points out, appellant's verbal consent at the time of the search was unnecessary. Any refusal on McFerrin's part would have been futile because the clause authorizing the warrantless search also explained that he "must submit" to the search. Given appellant's and his sister's prior consent, we cannot say that the warrantless search was not a proper parole search. Accordingly, we conclude that the trial court's decision to deny appellant's motion to suppress was supported by a preponderance of the evidence.

### III. Motion in limine

■ Even if the warrantless search was valid, McFerrin claims that the trial court erred by denying his motion *in limine* and admitting evidence of the cash found in his sister's residence and retrieved from under the back-seat floorboard of Roy Green's car. Specifically, appellant asserts that the evidence lacked relevance to the facts and issues raised in the case. Evidence is relevant, and generally admissible, if it has any tendency to make the existence of any fact that is of consequence to the trial's outcome more or less probable than it would be without the evidence. Ark. R. Evid. 401 (2000). Significantly, the decision to admit evidence is within the trial court's discretion. Therefore, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of that discretion nor will we reverse absent a showing of prejudice. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996), *cert. denied*, 117 S. Ct. 246 (1996).

■ Again, we note that appellant has failed to offer any authority in support of his argument, and we may decline to reach the merits of this point as it is not apparent without further research that the argument is well-taken. *Matthews*, 327 Ark. 70, 938 S.W.2d 545. Nevertheless, our case law does not support appellant's contention. In an illustrative case, we held that where an accused is found near the time of a robbery in possession of an amount of money similar to that taken in the robbery, the money is relevant evidence that the accused committed the crime. *See Logan v. State*, 264 Ark. 920, 924, 576 S.W.2d 203, 205-06 (1979).

■ Given McFerrin's possession of approximately $2,600.00 within hours of Branscum's robbery and his lack of gainful employment, we cannot say that the cash seized did not tend to make appellant's guilt more probable that it would be without its admission. Consequently, we hold that the trial court did not abuse its discretion by finding that the cash evidence was relevant and admissible.

### IV. Statement of Greg Hayward

For his final point on appeal, McFerrin challenges the trial court's decision to admit the testimony of Greg Hayward, appellant's former cellmate. The State planned to question Hayward

about statements McFerrin allegedly made to him about Branscum's robbery and murder. However, during examination, Hayward insisted that McFerrin told him nothing. In response to the witness's denial, the State offered him an unidentified document to refresh his memory. Hayward claimed that whatever was in the document was a lie and that he had never discussed the robbery or murder with appellant.

Appellant objected to Hayward's testimony on the ground that the document constituted improper impeachment because the witness denied the truth of its contents. However, the State never asked Hayward about the document's contents nor sought to introduce the document into evidence. As a result, the trial court overruled appellant's objections to Hayward's testimony.

On appeal, McFerrin contends that the State improperly introduced Hayward's testimony for the sole purpose of introducing inadmissible hearsay under the guise of impeachment. *See Roberts v. State*, 278 Ark. 550, 648 S.W.2d 44 (1983). In *Roberts*, an eyewitness gave an unsworn statement to police implicating the defendant in a murder. Subsequently, the witness gave two additional statements denying the truth of the prior statement. At trial, the State called the witness and impeached him with his initial statement implicating the defendant. We held that such impeachment was "a mere subterfuge" for the State's true intention of introducing the hearsay statement as substantive evidence of the defendant's guilt. *Id.*, 278 Ark. at 552, 648 S.W.2d at 46.

Importantly, in a later case discussing *Roberts*, we held that *Roberts* was not controlling where there was no evidence that the State knew that its witness would contradict her earlier statements to police. *See Roseby v. State*, 329 Ark. 554, 565, 953 S.W.2d 32, 38 (1997). The same reasoning applies in the instant case. Appellant proffered no evidence that the State knew Hayward would contradict his prior statement implicating McFerrin in the robbery and murder.

Appellant also fails to show any prejudice from the trial court's decision to admit Hayward's testimony. We will not reverse the trial court absent an abuse of its discretion nor will we reverse absent a showing of prejudice. *Misskelley*, 323 Ark. 449, 915 S.W.2d 702. First, the State never questioned Hayward about the challenged document's contents nor sought its introduction. Given that the jury was never made aware of the document's contents, we cannot say that appellant suffered prejudice.

■ Second, Hayward's testimony may have been favorable to appellant because he denied that McFerrin ever discussed the crime with him. Although Hayward acknowledged remembering the substance of the document offered him by the State, he declined to read it and claimed that it was a lie. He also raised allegations of police misconduct in obtaining appellant's conviction. He admitted to being pepper-sprayed at the jail and suggested that police officers wanted his help in convicting McFerrin. In light of the foregoing, we affirm the trial court's decision to admit Hayward's testimony.

*V. Rule 4-3(h)*

In accordance with Ark. Sup. Ct. R. 4-3(h) (2000), the record has been reviewed for adverse rulings objected to by the appellant but not argued on appeal, and no reversible errors were found. Accordingly, we affirm the trial court and appellant's judgment of conviction.