Perry Burton HOLMES v. STATE of Arkansas

CR 01-1057 65 S.W.3d 860

Supreme Court of Arkansas
Opinion delivered February 7, 2002
[Petition for rehearing denied March 14, 2002.]

*Frank E. Shaw*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Perry Holmes was charged with possession of methamphetamine, possession of drug paraphernalia, and possession of marijuana after police, responding to a call involving another individual, entered Holmes's house and found drugs and drug paraphernalia inside. After the trial court denied his motion to suppress the items seized from his home, Holmes entered a conditional plea of guilty to the three charges; he then appealed to the court of appeals, and that court reversed his conviction. The State filed a petition for review in this court, and we accepted jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(3), as the appeal involves issues of federal constitutional interpretation. We likewise reverse Holmes's conviction.

On a petition for review, this court reviews the case as if the appeal had originally been filed in this court. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999). On review of a trial court's denial of a motion to suppress, this court makes an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Burris v. State*, 330 Ark. 66, 71, 954 S.W.2d 209 (1997). In making that decision, the court reviews the evidence in the light most favorable to the State. *Id.*

On April 23, 1999, the Faulkner County Sheriff's Department responded to a domestic violence call involving a man named David Ellis. Officer David Srite located Ellis at Holmes's house, and as Srite pulled into Holmes's driveway, Holmes and Ellis came outside. Because Srite had information that Ellis might be armed, he performed a pat-down search. Other officers arrived at the

scene, and Srite asked them to take Ellis and Holmes to the squad cars to interrogate them.

Srite then saw a woman, later identified as Rosa Beth Allen, standing in the doorway of the house and decided to question her about Ellis. Srite testified that, when he asked her if there was anywhere that they could talk, Allen opened the door and stepped back.[1] Interpreting Allen's gestures as an invitation to come into the house, Srite stepped inside, whereupon he immediately smelled the strong odor of recently burned marijuana. He asked Allen where the marijuana was, and she pulled out a tray containing marijuana and drug paraphernalia. Srite then asked to whom the marijuana belonged, and Allen replied, "Perry."

Srite then went outside to talk to Holmes, and Deputy Ursula Westmoreland entered the house to stay with Allen. Srite read Holmes his *Miranda* rights, and then asked Holmes to sign a consent-to-search form. After Holmes signed the consent, Srite took him inside, cleared off the couch to make sure it did not have any weapons hidden in it, and then searched the house. Srite and Westmoreland found roaches (the butts of marijuana cigarettes), seeds, and marijuana; after Holmes said there was methamphetamine in a refrigerator, the police retrieved that as well.

Holmes moved to suppress these items, but the trial court denied his motion, finding that Holmes freely consented to the search and that the police were justified in entering the residence and searching it out of concern for their own safety. On appeal, Holmes argues that the trial court erred in ruling that the officers' concern for their safety justified the warrantless entry into his home. He also asserts that Rosa Beth Allen did not consent to the officers' entry, and even if she had, she did not have the authority to do so.

■■ We agree with Holmes's argument that the trial court erred in denying his motion to suppress on the basis of the officers' safety. Rules 3.1 and 3.4 of the Arkansas Rules of Criminal Procedure are relevant here. Ark. R. Crim. P. 3.1 (2001) covers the detention of persons and reads as follows:

---

[1] On redirect examination, Srite further testified that "[e]veryone else was *outside* except her, and that was the problem. I was running out of space to do a one-on-one investigation." The context of Srite's testimony reflects he wanted to go inside the house to talk to Allen.

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons[2] or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Rule 3.4, which governs a police officer's search for weapons, provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him *may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.* (Emphasis added.)

 Under Rule 3.1, Officer Srite was entitled to stop and detain David Ellis, and because Srite had reason to believe that Ellis had a weapon, he was justified in searching Ellis's outer clothing. However, as the last sentence of Rule 3.4 states, "[i]n no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer." At the time of the search, Ellis was outside, and was promptly taken to a waiting squad car for further questioning. There was no evidence to show that entry into Holmes's house was necessary or required to protect the officers' safety. Thus, once Srite determined that Ellis either was or was not a danger to Srite's safety, the search should have been terminated. Rules 3.1 and 3.4 did not authorize Srite's entry into Holmes's house, and the trial court erred in ruling otherwise.

██ ██ Holmes's second point on appeal is that the trial court erred in basing its denial of the motion to suppress on Allen's "consent" to Srite's search of the house. In response, the State contends that Srite did not go into the house to "search" for anything, but merely went in to question Allen about how long Ellis had been at that location. In resolving this issue, we first must

---

[2] As already mentioned, the police were looking for David Ellis because they had received a report that he had violated a protective order and was possibly carrying a gun.

consider what constitutes a "search." Ark. R. Crim. P. 10.1 (2001) defines a search as follows: "[*A*]*ny intrusion other than an arrest, by an officer under color of authority, upon an individual's* person, *property*, or privacy, *for the purpose of* seizing individuals or things or *obtaining information by inspection or surveillance*, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or violation of the individual's rights under the Constitution of the United States or this state." (Emphasis added.) The commentary to Rule 10.1 notes that "[t]he key word in the definition is 'intrusion,' a term sufficiently broad to encompass any legally cognizable interference with an individual's right to privacy. . . . [T]he definition of 'search' is extended to cover any intrusions upon the privacy of an individual." Srite's entry into Holmes's house clearly amounted to a search, within the meaning of this rule.

■ We next consider whether or not the search was reasonable. On this subject, the United States Supreme Court wrote, in *Payton v. New York*, 445 U.S. 573 (1980), the following:

> [T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.

> \* \* \*

> It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.

> \* \* \*

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home — a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." [Citation omitted.] In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton*, 455 U.S. at 585-86, 589-90. Further, the Court has noted that, "[w]ith few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27 (2001).

Consistent with the above principles, this court has likewise held repeatedly that warrantless searches in private homes are presumptively unreasonable. *See, e.g., McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999); *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997). The burden is on the State to prove that the warrantless activity was reasonable. *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). However, the presumption of unreasonableness may be overcome if the law-enforcement officer obtained consent to conduct a warrantless search. *See* Ark. R. Crim. P. 11.1 (2001); *see also Hillard v. State*, 321 Ark. 39, 900 S.W.2d 167 (1995).

In the present case, the State argues that because Holmes consented to the search of his home in writing, the search was constitutionally permissible. We cannot agree with this assessment. Holmes did not sign the consent-to-search form until after the initial intrusion had taken place and marijuana had been found. In *Evans v. State*, 33 Ark. App. 184, 804 S.W.2d 730 (1991), the court of appeals correctly recited the "fruit of the poisonous tree" doctrine, which provides that evidence obtained by the exploitation of a primary illegality must be excluded. *See Wong Sun v. United States*, 371 U.S. 471 (1963). In applying this doctrine to the facts in the instant case, we must determine the propriety of Officer Srite's initial intrusion, since if that entry was illegal, Holmes's subsequent consent cannot validate Officer Srite's initial warrantless entry into the Holmes home.

In turning to the validity of Srite's initial warrantless entry permitted by Allen, the State argues that Allen's actions in opening the door to Srite constituted a valid "third-party consent" that rendered his intrusion into the home reasonable. Ark. R. Crim. P. 11.2 (2001) provides that "[t]he consent justifying a search and seizure can only be given, in the case of: . . . (c) [a] search of premises, by a person who, by ownership or otherwise, is apparently entitled to give or withhold consent." The State contends that Srite could have reasonably relied on Allen's apparent authority to consent to his entry into Holmes's house.

We first address the question of whether or not Allen consented to the search. This court has held that consent to an

invasion of privacy must be proved by clear and positive testimony, and this burden is not met by showing only acquiescence to a claim of lawful authority. *See, e.g., Martin v. State,* 328 Ark. 420, 944 S.W.2d 512 (1997); *Meadows v. State,* 269 Ark. 380, 602 S.W.2d 636 (1980). The concept of "implied consent" was examined in *Norris v. State,* 338 Ark. 397, 993 S.W.2d 918 (1999), where this court looked to *United States v. Gonzales,* 71 F.3d 819 (11th Cir. 1996), and wrote as follows:

> The question of "implied consent" . . . was more closely examined recently in *U.S. v. Gonzalez, supra.* In *Gonzalez,* the officer approached an individual outside her home and asked if she would consent to a search of her home. Following a conversation with her daughter, she told the officer she wanted to go inside and get a drink of water. The officer then told her he "wanted to go in" with her, and when she did not bar him from going in, he followed her inside. The Eleventh Circuit held that there was no consent to enter:
>
>> We have previously noted our hesitancy to find implied consent (*i.e.* consent by silence) in the Fourth Amendment context, and we agree with our colleagues in the Ninth Circuit that *whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to 'sanction entry into the home based upon inferred consent.'*
>
> *Gonzalez* then quoted from *U.S. v. Shaibu,* 920 F.2d 1423 (9th Cir. 1990), to which it had referred above:
>
>> The government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. "This will not do." *Johnson v. United States,* 333 U.S. at 17. *We must not shift the burden from the government — to show "unequivocal and specific" consent — to the defendant, who would have to prove unequivocal and specific objection to a police entry, or be found to have given implied consent.*
>
> *Gonzalez,* 71 F.3d at 830.

*Norris,* 338 Ark. at 409 (emphasis in original).[3]

---

[3] Although the dissent emphasizes that Officer Srite's objective was only to interrogate Allen about the alleged domestic violence incident, it nevertheless *ignores the oft-repeated*

■ While we do examine the evidence in the light most favorable to the State when we review a trial court's denial of a motion to suppress, we are unable to conclude that the State met its burden of proving by clear and positive testimony that Allen "consented" to Srite's entry. When he testified at the suppression hearing, Srite conceded that Allen did not say "come on in," or otherwise verbally invite him to enter. Rather, she opened the door and stepped back; she may have nodded. As the court of appeals noted, Allen could have been inviting Srite in, or she could have been "reacting to the command of a law enforcement officer who . . . was accompanied by at least two other officers who had already taken away the person who resided in the house." To conclude that Allen's actions amounted to an invitation to Srite's entry would be to "sanction entry into the home based upon inferred consent," which we are loath to do. Also, Srite conceded that Allen "appeared to be under the influence," which added to the uncertainty and lack of clarity of what Allen intended by her actions. Based on the totality of the circumstances, we conclude that the trial court erred in denying Holmes's motion to suppress.

■ Because we believe the State failed to prove by clear and positive testimony that Allen consented to Srite's entry into the home, we need not consider whether or not Allen possessed apparent authority to give consent.[4] Because the warrantless entry into Holmes's house was unreasonable, we hold the trial court erred in denying Holmes's motion to suppress.

---

rule that a warrantless entry into a private home is per se unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001); *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992). Further, the dissent appears to take no notice of our emphasis on what, under Rule 10.1, constitutes a "search." As discussed above, a search is defined as "any intrusion . . . *upon an individual's* person, *property*, or privacy, *for the purpose of . . . obtaining information*[.] . . . The definition of 'search' is extended to cover *any intrusion upon the privacy of an individual*." (Emphasis added.) Clearly, Officer Srite's intrusion into Holmes's house, without clear evidence of Allen's consent, constituted an improper search.

[4] We do briefly address the State's contention that, once inside, Srite's detection of the odor of marijuana constituted reasonable cause to conduct a search. In support of this argument, the State cites *McDaniel v. State*, 337 Ark. 431, 990 S.W.2d 515 (1999). That case, however, dealt with a vehicular search, not a warrantless search of a private home. It is well established that warrantless searches of automobiles may be reasonable when, under the same circumstances, a search of a home, place of business or other structure would not be because of the mobility of the automobile and the diminished expectation of privacy in an automobile. *See, e.g., Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980); *Williams v. State*, 26 Ark. App. 62, 760 S.W.2d 71 (1988). Here, however, the initial warrantless entry into the home was unreasonable, and as such, the State's argument that the discovery of the marijuana was the result of a "logical progression of events," is without merit, as that theory depends on the initial stop being valid. *See Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982); *Adams v. State*, 26 Ark. App. 15, 758 S.W.2d 709 (1988).

Reversed and remanded.

CORBIN and BROWN, JJ. dissent.

ROBERT L. BROWN, Justice, dissenting. I am at a loss to know what Officer David Srite did wrong in this case. He was responding to a domestic violence call involving David Ellis. After patting Ellis down for weapons outside the house, he went to the front door and asked Rosa Beth Allen if he could talk to her about the matter. She opened the door, stepped back, and nodded. I view that as specific and unequivocal consent to *enter*. At this point, possession of illegal drugs by Perry Holmes was not even on Officer Srite's radar screen. Everyone agrees that as he entered the house, his sole interest was domestic violence. After entering, he smelled marijuana.

My first problem with the opinion is that the majority analyzes this case as a consent-to-search case. It clearly is not. A consent to enter the house to talk is all that was involved. Other jurisdictions have recognized this important distinction between a consent to enter and a consent to search when there is no showing that the police officers gained entry by subterfuge to investigate another crime. *See, e.g., State v. Pamer*, 70 Ohio App.3d 540, 591 N.E.2d 801 (1990); *Bell v. State*, 676 S.W.2d 219 (Tex. Ct. App. 1984); *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964). In *Pamer*, the facts are almost identical to this case. The sheriff's deputies were responding to a domestic disturbance and the appellant's daughters let them inside the house at 1:30 a.m. Once inside, the officers saw marijuana in plain view. In refusing to suppress the marijuana, the Ohio Court of Appeals underscored the fact that the only intent of the deputies in entering the house was to assure that the daughters were safe — not to search for marijuana.

In *Bell v. State, supra*, the police officers were at the house to serve a protective custody order. A police officer knocked and a voice said, "come in." The police officer entered and saw a woman injecting herself with a hypodermic needle. Next to where the woman was sitting was a plate of heroin. The Texas Court of Appeals refused to suppress the heroin and distinguished a consent to enter from a consent to search. The court specifically emphasized that there had been no showing that the police officers entered by fraud or deceit.

I distinguish these cases and the case before us from a situation where police officers have received a complaint of illegal activity

and go to a residence with investigation or a search in mind without a search warrant. *See, e.g., State v. Kennedy*, 107 Wash. App. 972, 29 P.3d 746 (2001) (police investigating narcotics complaint saw plastic baggie with methamphetamine after consent to enter; drugs suppressed); *State v. Buzzard*, 194 W.Va. 544, 461 S.E.2d 50 (1995) (police investigating breaking and entering went to motel room where consent to enter given; court suppressed shoes in plain view used in the crime on basis consent not voluntarily given). Those fact situations are not the case before us.

What should Officer Srite have done differently? Should he have said, "I want to talk to you about Ellis and domestic violence, but if you have any illegal activity going on inside, don't let me in." That seems a highly unreasonable test for this court to invoke. Should he have had Ms. Allen sign a waiver of all rights before entering to talk, much like a *Miranda* waiver, or advised her that she did not have to consent? That approach might have more validity if this were a "knock-and-talk" case where consent to search was the issue from the beginning. *See, e.g., State v. Ferrier*, 136 Wash. 2d 103, 960 P.2d 927 (1998). But it is not. Again, the police officer only wanted to talk to her about Ellis and domestic violence, not Holmes and drugs. A consent to search for drugs was not on Officer Srite's mind, when he was standing on the threshold of the house. I would not suppress the marijuana and drug paraphernalia under these facts.

For that reason, I respectfully dissent.

CORBIN, J., joins.