Kathy Kay WELLS and Rodney Dutton *v.*
STATE of Arkansas

CA CR 04-914                                              217 S.W.3d 145

Court of Appeals of Arkansas
Opinion delivered November 16, 2005

*Erwin L. Davis,* for appellant.

*Mike Beebe,* Arkansas Attorney General, by: *Karen Virginia Wallace,* Assistant Attorney General, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. After a jury trial, appellants Kathy Wells and Rodney Dutton were found guilty of abuse of an adult and false imprisonment, and Dutton was additionally found guilty of use of a prohibited weapon. On appeal, appellants contend that there is no substantial evidence to support their convictions and that the trial court erred in denying their motion to suppress evidence obtained in the warrantless search of their residence. We affirm.

Preservation of appellants' right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Harris v. State,* 284 Ark. 247, 681 S.W.2d 334 (1984). In determining the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and we affirm if there is substantial evidence to support the verdict. *Lowe v. State,* 357 Ark. 501, 182 S.W.3d 132 (2004). Substantial evidence is evidence that is forceful enough to compel reasonable minds to reach a conclusion one way or the other without having to resort to speculation or conjecture. *Benson v. State,* 357 Ark. 43, 160 S.W.3d 341 (2004).

Viewed in light of this standard, the evidence reflects that the victim, who was eighty-seven years of age at the time of trial, has suffered from Alzheimer's disease since 1996. There was evidence that the previous residence of appellants and the victim was purchased at a foreclosure sale by Ottie Talkington. Mr. Talkington testified that, when he inspected the residence following the sale, he found it to have an unbearable smell of urine and feces and had what appeared to be human feces in the carpet and on the floor. The air conditioner in the house was broken and the toilets were filled with human waste. Thirteen truckloads of waste were removed from the residence. The room where appellant Wells had informed him that the victim stayed had an unlit, unventilated closet that reeked with an overpowering odor of urine. The closet was fitted with a deadbolt that locked from the

outside and that could not be opened from inside the closet without a key. Talkington found a Burger King box filled with human feces just outside the closet, and a hand print on the inside of the closet door. After making these discoveries Mr. Talkington's wife, Latisha Sue Talkington, concluded that someone had been imprisoned in the closet, and she called the police.

Detective Lannie Reese assisted in the ensuing investigation into the welfare of the octogenarian victim. Upon receiving information that the victim was at 1117 N. 34th Street, he promptly went to that address. Appellants both answered the door and invited Detective Reese into the living room. Detective Reese informed them that he was there to check on the welfare of the victim. When appellants informed Detective Reese that the victim was visiting a friend, but that they did not know the friend's name or address, he concluded that the victim was in danger and began to conduct a warrantless search of the residence. Appellant Wells ran to the back bedroom and tried to shut the door. Forcing the bedroom door open, Detective Reese saw that the bedroom closet was barred with a two-by-four secured by L brackets. What appeared to be fecal stains were seen on the bedroom carpet. The two-by-four was removed, and the victim emerged from the closet. She was naked, disoriented, and was carrying dried feces in both hands. Her eyes had difficulty adjusting to the light. She was very frail and white and said that she was hungry. The closet in which the victim was imprisoned smelled strongly of urine and contained a sheet, a cup, a food container, and a bedpan. There was no air conditioning, window, or other ventilation in the closet. Appellants admitted that they locked the victim in the closet, stating that they did so for an hour or ninety minutes at a time, eight to ten times per day. The victim, who was unable to walk without assistance and was in need of medical attention, was transported to the hospital. The victim weighed eighty-eight pounds when she was rescued, and has since returned to her normal weight of approximately one hundred and twenty pounds.

Appellants were convicted of violating Ark. Code Ann. § 5-28-103 (Repl. 1997), which in pertinent part provides that:

> (a) It shall be unlawful for any person or caregiver to abuse, neglect, or exploit any person subject to protection under the provisions of this chapter.

> (b)(1) Any person or caregiver who purposely abuses an endangered or impaired adult in violation of the provisions of this

chapter, if the abuse causes serious physical injury or substantial risk of death, shall be guilty of a Class B felony and shall be punished as provided by law.

At the time of the offenses, "abuse" was defined in section 5-28-101(1) as including:

(A) Any intentional and unnecessary physical act which inflicts pain on or causes injury to an endangered or impaired adult, including sexual abuse; or

(B) Any intentional or demeaning act which subjects an endangered or impaired adult to ridicule or psychological injury in a manner likely to provoke fear or alarm[.]

Ark. Code Ann. § 5-28-101 (Supp. 2001).

■ Appellants argue that their actions did not constitute Class B felony adult abuse because there is no substantial evidence that the victim was seriously injured or placed in substantial risk of death. We disagree. "Serious physical injury" is defined as physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(19) (1987). The record shows that the victim was aged and suffered from severe disorientation and confusion as a result of Alzheimer's disease. By the time she was found and rescued by Detective Lannie Reese, the victim had lost thirty pounds and had become too weak to walk without assistance. By their own admission, appellants kept her locked in a closet for hours at a time several times per day, and there was evidence that the closet was filthy and unventilated. In light of the evidence of the victim's profound weight loss, debilitation, and inability to walk when rescued; of the unsanitary, unhealthy, and inhumane conditions of her confinement; and of the expert testimony that such confinement was dangerous and never appropriate for an Alzheimer's patient, we cannot say that the finder of fact could not properly conclude that the victim suffered protracted impairment of health and substantial risk of death because of her confinement by appellants. We hold that the evidence is sufficient to support a finding of serious physical injury.

■■ Appellants also argue that the evidence is insufficient to support their convictions for false imprisonment and appellant Dutton's conviction for use of a prohibited weapon.

These arguments are not well-taken and require little discussion. Appellants' argument that there is no evidence that the victim was held against her will defies logic in light of the victim's condition, the locked and barred closet in which she was confined, and appellants' efforts to conceal her imprisonment. There was no evidence that the victim consented to her imprisonment and much evidence that she was incapable of doing so. With regard to appellant Dutton's argument that there was no evidence that he was the person in possession of the prohibited weapon, a sawed-off shotgun, there was evidence that Dutton admitted possessing it, that it had been inoperable when he first obtained it, and that, when seized, it had been cleaned, repaired, and was loaded.

The remaining issue involves the denial of appellants' motion to suppress evidence found in the warrantless search of their house. In reviewing the trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Holmes v. State*, 347 Ark. 530, 65 S.W.3d 860 (2002) (citing *Payton v. New York*, 445 U.S. 573 (1980)). In the absence of a warrant, both probable cause and exigent circumstances must be present in order to enter a residence or private dwelling without violation of the Fourth Amendment prohibition against unreasonable searches. *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992). Exigent circumstances are those requiring immediate aid or action. *Id.* Based on our *de novo* review of the totality of the circumstances, we hold that there existed both probable cause and exigent circumstances to support the search in this case. Detective Reese had, four days before the search, obtained evidence indicating that someone had been imprisoned under appalling conditions in the closet at appellants' former residence and that the victim, an Alzheimer's patient, was missing. Investigation proceeded and, after learning of appellants' new address from utility records, the detective recruited other officers to assist him and went to appellants' address out of concern for the victim's welfare. After appellant Wells gave implausible and evasive answers concerning the victim's whereabouts, Detective Re-

ese conducted a search that immediately disclosed the barred closet in which the victim was imprisoned. Given the evidence of the victim's age, medical condition, and disappearance; and considering appellant Wells's evasive answers concerning the victim's whereabouts in light of the officer's knowledge of the strong evidence of imprisonment under inhumane conditions found at the appellants' former residence, we hold that the record supports a finding of both probable cause and exigent circumstances.

Affirmed.

GLADWIN and GLOVER, JJ., agree.