Elery DENDY *v.* STATE of Arkansas

CA CR 05-67                                          218 S.W.3d 322

Court of Appeals of Arkansas
Opinion delivered November 30, 2005

*Darrel Blount*, for appellant

*Mike Beebe*, Arkansas Attorney General, by: *Clayton K. Hodges*, Assistant Attorney General, for appellee.

KAREN R. BAKER, Judge. A Garland County jury convicted appellant Elery Dendy of nine counts of forgery in the second degree, and he was sentenced to the Arkansas Department of Correction for ninety years. The appellant argues on appeal that the trial court erred in denying his motions to suppress evidence and a statement, as well as his motion for a directed verdict. We agree that the trial court erred in denying the appellant's motions to suppress and reverse and remand.

On January 14, 2004, officers of the Hot Springs Police Department were in the area of the home of appellant Elery Dendy for the purpose of locating a stolen car and a suspect in the theft. The appellant was not a suspect. While the police officers were

questioning an individual who was standing in the appellant's yard concerning the theft of the car, the appellant came outside his home and stood on his front porch. Detective Chapmond testified that he observed that the appellant had paper in his hand when he stepped outside his door — paper that Chapmond identified as blank stock often used for the printing of checks. When questioned as to the purpose of the check stock, the appellant told Chapmond that he was printing gift certificates for a local company and provided the phone number of the company for verification. Another Hot Springs police officer testified that this information was indeed verified in a phone call to the company. The appellant then additionally offered to show the detectives his "artwork" and went inside his home. Chapmond followed the appellant inside the home, testifying variously that he "interpreted," "assumed," or deduced by implication that the appellant invited him into the home. The appellant denies that he invited the detective inside his home, pointing to the fact that as a four-time convicted felon he was not in the habit of inviting police officers into his home. He instead asserted at trial that his intent was simply to retrieve a printed gift certificate to additionally convince the detectives of his legitimate use of the check stock.

Chapmond testified that after he entered the home he observed a check partially inside an envelope and several crumpled checks in a trash can. He then obtained written consent from the appellant to search the home. Further search revealed what Chapmond testified appeared to be fake identification cards, which he said may have included those in the name of Bill Clinton, James Dean, Marilyn Monroe, Eddie Murphy, Elvis Presley, and perhaps Richard Nixon.

The appellant's motion to suppress evidence seized pursuant to the warrantless entry was denied by the trial judge after a hearing, and the appellant was convicted in a jury trial of nine counts of forgery in the second degree. The jury was presented with evidence of the appellant's prior convictions and sentenced him as a habitual criminal to a term of thirty years and a one thousand dollar fine for each of the nine counts. The trial judge ran three of these counts consecutively and the remaining six counts concurrently with the first three — for a total period of incarceration of ninety years. Appellant presents three arguments on appeal: 1) that the trial court erred when it denied the appellant's motion to suppress items seized during a search of his home; 2) that the trial court erred in allowing into evidence a statement taken from

the appellant at the Hot Springs Police Department; 3) that the trial court erred in denying the appellant's motion for a directed verdict. We agree that the trial court erred when it denied the appellant's motion to suppress the evidence and statement and therefore reverse and remand.

Although the appellant's last point on appeal concerns the trial court's denial of his motion for a directed verdict, we address this point first due to double jeopardy considerations it is a "general rule that, when an appellant challenges the sufficiency of the evidence, we address that issue prior to all others." *Misskelley v. State*, 323 Ark. 449, 458, 915 S.W.2d 702, 707 (1996) (citing *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984)). When a defendant makes a challenge to sufficiency of evidence of the evidence on appeal, we view the evidence in the light most favorable to the State. *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture; only evidence supporting the verdict will be considered. *Id.* When a challenge to sufficiency of the evidence is reviewed, the conviction will be affirmed if there is substantial evidence to support it. *Id.*

The appellant specifically argues that the State failed to prove that he possessed forged checks with the intent to defraud, and that without the establishment of this essential element there was not sufficient evidence to sustain his conviction. The appellant points to fact that some of the checks were found in a wastebasket and that "one does not discard checks if he intends to use them to defraud others." We find this argument unconvincing. In this case appellant made a statement to the police admitting that he had been engaged in a forgery scheme and that his price for forged checks varied according to the amount of the check. A person forges a written instrument if he "with purpose to defraud he draws, makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act." Ark. Code Ann. § 5-37-201(a) (Repl. 1997). We find that there was substantial evidence to sustain the appellant's conviction based on his confession to police, combined with the forged checks found in his home.

We now turn to appellant's remaining points on appeal concerning the denial of his motions to suppress the evidence seized in the search of his home and his subsequent statement. In reviewing the trial court's denial of a suppression motion by the trial court, we make a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicions or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

A warrantless entry into a private home is presumptively unreasonable under the Fourth Amendment and Article 2, § 15 of the Arkansas Constitution. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Katz v. United States*, 389 U.S. 347 (1967); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002); *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002); *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992). This presumption of unreasonableness may be overcome if the law enforcement officer obtained the consent of the homeowner to conduct a warrantless search. *See Holmes v. State*, 347 Ark. 530, 65 S.W.3d 860 (2002) (citing Ark. R. Crim. P. 11.1; *Hillard v. State*, 321 Ark. 39, 900 S.W.2d 167 (1995)). The Arkansas Supreme Court, however, has established that the State has a heavy burden to prove by clear and positive testimony that consent to search was freely and voluntarily given. *Holmes, supra*; *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999); *Scroggins v. State*, 268 Ark. 261, 595 S.W.2d 219 (1980). Any consent given must be unequivocal and may not usually be implied. *Holmes, supra*; *Norris, supra* (citing *U.S. v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996)); *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). Further, the State must prove by clear and positive testimony that the consent to enter and search was unequivocal and specific. *See id.*; *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004).

The Arkansas Supreme Court's decision in *Holmes* addressed the issue of a warrantless entry into a home and whether consent was given based on implied or inferred consent. The court in *Holmes* examined the testimony of a law enforcement officer who admitted that he did not receive a verbal invitation, but instead that an individual "opened the door and stepped back; she may have nodded." *Holmes*, 347 Ark. at 540, 65 S.W.3d at 865—66. The court held that this testimony was not clear and positive, and therefore it was insufficient to prove that consent was given; the trial court erred in denying a motion to suppress evidence. *Id.* The

State argues in its brief that the holding of *Holmes* is that the burden of showing consent to enter a residence by clear and positive testimony requires "some verbal communication of permission" and that this burden is met here by the testimony of Detective Chapmond. The State is wrong on both counts. First, this is not an accurate statement concerning the holding of *Holmes* on consent to enter a residence. The court in *Holmes* did not explicitly require verbal communication of permission. The court stated that there was "uncertainty and lack of clarity" intended by non-verbal actions in that case, and without clear and positive testimony that provided clarity beyond inference, the trial court erred in not granting a motion to suppress. *Id.* Second, Detective Chapman's testimony did not demonstrate verbal communication of permission to enter in the present case.

It is the State's burden to prove by clear and positive testimony that consent to enter the appellant's home was unequivocal and specific. Yet, the consent asserted by the State here is, like *Holmes*, based solely on inference.

Detective Chapmond's testimony at both the suppression hearing and at trial is far from unequivocal. When Chapmond testified at the suppression hearing he stated that the appellant offered to show him the "artwork" on the gift certificates — which Chapmond said that he assumed to mean that the appellant was "proud of his work and wanted to show it off" — and when the appellant turned around and entered the house, Chapmond believed he was, in effect, invited in. In subsequent examination at the suppression hearing, Chapmond also testified that when the appellant offered to show him the artwork he "interpreted it" as artwork on a computer, and that based on this interpretation he followed the appellant inside the house without an actual invitation. Chapmond stated that could not remember the appellant's exact words or even whether "he invited me inside his house, but I took it as an invitation."

The motion to suppress was denied, and at trial Chapmond continued to describe the warrantless entry with testimony that can in no way be reasonably characterized as unequivocal and specific consent. Chapmond variously stated that he "took it as an invitation to come inside;" that he "construed [the appellant] saying, 'I'll show you the artwork,' as an invitation to come into his house and look at his computer;" and he "took it as an invitation to enter the home." The appellant testified at trial that after detectives called the local company and verified he was

making gift certificates that "I told [Champond] to wait and I'd show him. I turned and walked back into my house and to my desk. When I turned around, there were three officers standing in my house." The appellant then noted that as a previously convicted felon he was not predisposed to invite police officers into his home. He further testified that Chapmond executed a search warrant on the appellant's home several months previously, and thereafter Chapmond had returned to the home approximately five times and on none of these occasions did he invite Chapmond inside.

The State attempts to give weight to Chapmond's characterization of the warrantless entry by attempting to show that the only reasonable interpretation of the appellant's offer to show the detectives his gift certificate artwork was that is was an invitation to enter the house. The only alternative interpretation, the State argues, would be would the ridiculous explanation that the appellant intended for Chapmond to remain on the porch while the appellant disassembled and unplugged his computer, carried it outside on the porch, and then reassembled it to show Chapmond an example of the gift-certificate artwork. The State, however, ignores a more reasonable interpretation that the appellant intended to go inside his home and retrieve printed copies of his artwork — previously printed gift certificates. This is what the appellant not only contends he intended, but also what he testified that he actually stated to the detectives prior to their entry.

The issue of the credibility of the testimony is not for this court to decide however, because we will not second-guess credibility determinations made by the factfinder. *Hale v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000); *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000); *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996). Instead, the relevant issue is whether the testimony and evidence of consent to a warrantless entry was sufficiently established. This requirement has not been met. Chapmond's testimony — consisting entirely of interpretations and assumptions — does not rise to the standard required of providing clear and positive testimony that the appellant unequivocally and specifically consented to the detectives' entry into the home. *See Holmes, supra; Norris, supra; Brown, supra; Stone, supra.* Detective Chapmond's warrantless entry into the appellant's home was illegal based on the totality of the circumstances.

The State argues that even if the warrantless entry was illegal, this defect was cured by the appellant's signature of a

consent-to-search form, and therefore all evidence seized following that consent, as well as a statement made shortly thereafter at the police station, should not be suppressed. Again, we disagree.

▉ The Arkansas Supreme Court cited directly from *Wong Sun v. United States*, 371 U.S. 471 (1963), in its holding in *Keenom v. State*, 349 Ark. 381, 390–91, 80 S.W.3d 743, 748–49 (2002), stating that:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Thus, we must determine whether the evidence seized after the appellant's written consent and statement was obtained by exploitation of the illegal warrantless entry into the appellant's home, or whether there was some intervening or attenuating event "sufficiently distinguishable to be purged of the primary taint." *See Wong Sun, supra.; United States v. Ramos*, 42 F.3d 1160 (8th Cir. 1994); *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002); *Brewer v. State*, 271 Ark. 810, 611 S.W.2d 179 (1981). Additionally, any intervening event or attenuation must be weighed against the seriousness of the police misconduct. *Brown v. Illinois*, 422 U.S. 590 (1975). Illegal entry by law enforcement officers into the homes of citizens is the "chief evil" the Fourth Amendment is intended to protect against and therefore is of the highest degree of seriousness. *Payton v. New York*, 445 U.S. 573 (1980); *see Holmes*, 347 Ark. at 537–38, 65 S.W.3d at 864; *See also Brown*, 356 Ark. at 468–69, 156 S.W.3d 722 at 728 (noting Arkansas constitutional provisions and caselaw emphasizing dangers to liberty posed by illegal warrantless entries and searches).

Here, there was no break in time or other intervening event between the illegal warrantless entry into the appellant's home, his written consent to search the home, and his written statement. Therefore, the primary taint of the unlawful warrantless entry into the appellant's home had not been sufficiently attenuated or purged. Under these circumstances, the fruits of the consensual search and written statement were poisoned by the officers' unlawful warrantless entry. Accordingly, we conclude the trial

court erred in failing to suppress both the evidence seized in the search of appellant's home and his statement at the police station.

Reversed and remanded.

GRIFFEN, VAUGHT, and ROAF, JJ., agree.

BIRD and CRABTREE, JJ., dissent.

SAM BIRD, Judge, dissenting. The majority has concluded that appellant's convictions must be reversed because the evidence relied upon by the State to prove his guilt was obtained as a result of a constitutionally unreasonable search of appellant's residence. I disagree with this conclusion because, in my opinion, appellant consented to the search. Therefore, I would affirm appellant's convictions.

I begin my discussion by noting that it does not appear to me that the majority opinion accurately reflects the suppression-hearing testimony of Detective Chris Chapmond. For example, the majority opinion omits Chapmond's direct-examination testimony that when appellant was standing on his front porch explaining to Chapmond what he was doing with the blank check stock, appellant explained that he was making gift certificates, and that appellant "invited me inside to show me the artwork on the computer." The majority opinion also omits Chapmond's direct-examination testimony that, after making this statement, appellant turned and entered his residence, whereupon Chapmond followed appellant inside and observed appellant sit down at his computer. Further, the majority omits Chapmond's cross-examination testimony that "[appellant] invited me in," by words to the effect that, "I will show you the artwork, it's on my computer." Finally, the majority opinion omits Chapmond's re-direct testimony, "I could not see the computer from the porch and he did not offer to bring it to the door." Because it failed to consider much of Detective Chapmond's testimony on the crucial issue of consent to search, it is not surprising that the majority has reached the wrong result in this case.

In my opinion, the appellant, by his words and conduct, consented to Chapmond's entry into his residence. It therefore follows that the statement obtained from Dendy following his arrest was not "fruit of the poisonous tree." Thus, I respectfully dissent from the opinion of the majority that the evidence seized from Dendy's home and his statement to police should have been suppressed.

As the majority opinion correctly observes, the State's case is based entirely upon evidence that was obtained as a result of a warrantless search of appellant's residence, and upon appellant's statement to police that followed the search. Also correctly noted by the majority is the well-established premise that warrantless searches are presumptively unreasonable, but that the presumption is overcome by evidence of the owner's consent to the search.

In concluding that the search in the case now before us was unreasonable and without consent, the majority opinion relies primarily on *Holmes v. State*, 347 Ark. 530, 65 S.W.3d 860 (2002). However, I believe that *Holmes* is factually distinguishable from this case. In *Holmes*, Faulkner County sheriff's officers responded to a domestic violence call at Perry Holmes's residence. As the officers turned into the driveway, Holmes and another man came out of the house and they were taken into police custody. One of the officers, David Srite, then observed a woman, identified as Rosa Beth Allen, standing in the doorway of Holmes's house, and Srite decided to question her about Holmes. When the officer asked Allen if there was anywhere they could talk, she opened the door, stepped back, and "may have nodded," gestures that Srite interpreted as Allen's invitation to come into the house. Upon entering the house, Srite discovered illegal drugs and drug para-phernalia. Srite then went back outside and asked Holmes to sign a consent-to-search form, which he did. An ensuing search of Holmes's residence led to the discovery of marijuana, marijuana "roaches," marijuana seeds, and methamphetamine, and to three charges of possession against Holmes.

In a motion to suppress the evidence that resulted from the search, Holmes specifically argued, among others things not per-tinent here, that Allen had not consented to the search of his residence. The trial court denied Holmes's motion, and Holmes entered a conditional guilty plea, reserving the right to appeal from the denial of his suppression motion.

On appeal, Holmes again argued that Allen's conduct in opening the door, stepping back, and nodding when asked by Srite if there was anywhere they could talk, did not constitute a consent to search. The supreme court agreed with Holmes, stating:

> To conclude that Allen's actions amounted to an invitation to Srite's entry would be to "sanction entry into the home based upon inferred consent," which we are loathe to do. Also, Srite conceded

that Allen "appeared to be under the influence," which added to the uncertainty and lack of clarity of what Allen intended by her actions.

*Holmes*, 347 Ark. at 540, 65 S.W.3d at 866. In making this decision, the *Holmes* court relied upon *Martin v. State*, 328 Ark. 420, 944 S.W.2d 512 (1997), *Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636 (1980), and *Norris v. State*, 338 Ark 397, 993 S.W.2d 918 (1999) (citing *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996), none of which limit the validity of consent to a warrantless search to situations involving an express invitation to enter. I agree that *Holmes* and the cases cited therein hold that "consent to an invasion of privacy must be proved by clear and positive testimony, and this burden is not met by showing only acquiescence to a claim of lawful authority"; and I agree that *Holmes* appears to also hold that, in addition to being clear and positive, the testimony must establish that the giving of consent to enter must be unequivocal and specific. However, I do not agree, as the majority opinion seems to imply, that in determining whether consent has been given, a police officer is not permitted to draw any inferences from the language or conduct of the person purporting to grant consent, and I do not agree that the testimony presented here does not meet the *Holmes* standards.

Unlike in *Holmes*, here an officer was in the area of appellant's residence looking for a suspect in an unrelated matter when appellant came outside. Detective Chapmond saw appellant standing in his doorway with blank check paper and asked him what he was doing. Appellant responded that he was making gift certificates, and he said something to the effect of "Let me show you the artwork on my computer." At that point, appellant turned around and went inside, and the officer followed him and observed appellant take a seat in front of his computer. The officer stated that he interpreted appellant's statement as "an invitation." I believe that this is sufficient evidence from which the trial court could have concluded that appellant clearly, positively, and unequivocally invited Detective Chapmond to enter his residence to look at something on his computer.

Furthermore, unlike in *Holmes*, in this case appellant knew that the police were not investigating criminal activity at his residence, so he could not have believed that he was merely acquiescing to a claim of lawful authority. Nor did appellant, who testified at the suppression hearing, suggest that the officers asked him for permission to enter his house. Rather, he testified that the

officers merely walked into his house and asked him what he was doing, contradicting the officer's testimony that appellant invited them in to see the artwork on his computer. We defer to the factfinder's resolution of issues of credibility and weight to be given to conflicting testimony. *See Porter v. State*, 356 Ark. 17, 145 S.W.3d 376 (2004). Also, unlike in *Holmes*, here there is no evidence that appellant was "under the influence" such as to create any uncertainty or lack of clarity as to what appellant intended by his words and actions of appellant's actions. Finally, unlike in *Holmes*, here we have evidence of words actually spoken by appellant which can be reasonably interpreted to be an invitation, not just an ambiguous nod of the head.

Once the officers had lawfully entered appellant's residence, they lawfully seized items in plain view, *see Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998), and appellant thereafter gave written consent to search his home. I also believe that appellant's statement to police was properly allowed into evidence because it was not derived from an unlawful entry into his home. Where the entry was not illegal, the statement cannot be the "fruit of the poisonous tree." *See Baird v. State*, 357 Ark. 508, 182 S.W.3d 136 (2004). I would therefore affirm the trial court's decision to deny appellant's motion to suppress evidence.

CRABTREE, J., joins.