David ROBBINS and Debra Kay Steenblock *v.* STATE of Arkansas

CA CR 05-717                                    231 S.W.3d 79

Court of Appeals of Arkansas
Opinion delivered March 8, 2006

[Rehearing denied April 12, 2006.]

*Robert R. White*, for appellants.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. In accordance with Rule 24.3 of the Arkansas Rules of Criminal Procedure, David Robbins and Debra Kay Steenblock entered conditional pleas of guilty to charges of possession of methamphetamine and possession of drug

paraphernalia. The Benton County Circuit Court sentenced them each to two years' imprisonment and a $1000 fine. Appellants now challenge the denial of their motion to suppress, arguing that (1) "the initial warrantless nighttime intrusion into [appellants'] home violated the Fourth and Fourteenth Amendments of the U.S. Constitution, as well as Article 2, § 15 of the Arkansas Constitution, and was not a valid 'exigent circumstances' search pursuant to Arkansas Rule of Criminal Procedure 14.3"; (2) the affidavit in support of the search warrant failed to set forth specific facts bearing upon the informants' reliability and therefore failed to meet the mandatory requirements of the Fourth and Fourteenth Amendments to the U.S. Constitution and Rule 13.1 of the Arkansas Rules of Criminal Procedure; and (3) the State's argument below that exigent circumstances justified a warrantless, forced entry into appellants' home in the middle of the night has no basis in fact or law. We agree with appellants' first and third points, and we reverse and remand.

At the suppression hearing, Jesse Ray, a narcotics officer with the Rogers Police Department, testified that, on October 11, 2003, he received a call between 8:30 and 8:50 p.m. from a United States Forestry Service officer who had just arrested Ted Harp and Randall Ardemagni. The men had information regarding a residence located at 6306 Southgate Road. Harp informed Officer Ray that he was at the home on October 10 and saw several items used to manufacture methamphetamine, including a blue air tank filled with anhydrous ammonia, cold and allergy pills, denatured alcohol, lithium batteries, hoses, muriatic acid, a glass jar, Pyrex dishes, and an unknown quantity of methamphetamine. Ardemagni told Officer Ray that he had been to the residence two weeks before Harp was there, and Ardemagni had seen muriatic acid, Heet, tubing, blenders, glass jars, Pyrex dishes, and an unknown quantity of methamphetamine. Ardemagni also notified Ray that there were several individuals that lived in the home, including a young child.

Officer Ray testified that the Rogers police had, less than a year prior, recovered a mobile methamphetamine lab from the driveway of the residence for which another man, Clayton Early Hart, was charged. Officer Ray also testified that they had received numerous calls on the house throughout the year, and that he was concerned about getting the child out of the home. He stated:

> I did not type up my affidavit for a search warrant because I was told there was a nine-year-old in the house and that was a concern of

> mine. In order to prepare the search warrant it was going to take probably a couple of hours and I wanted to get the child out of the house. We did not go to the house for three, 3 ½ hours, something like — had to get all the guys that are going out with me to secure the house. Anytime you do a search warrant or clear a house for search warrant it[']s usually pretty dangerous, or could be, so I wanted to make sure I had enough guys to help me.

He acknowledged, however, that he did not call emergency services to meet him at the site nor did he call the Arkansas Department of Human Services until after the search warrant was executed because, when he arrived at the home, "the boy looked healthy" and because they had not searched the home.

Officer Ray and his fellow officers arrived at the residence at around 12:28 a.m. on October 12. Once there, the officers knocked on the door; when they received no response, they forced entry into the home and were confronted by David Robbins standing near the front door with his young son, Troy. Another man, Kevin Taylor, was found hiding around a corner in the living room. Officer Ray stated that, once they identified everyone, they released them and secured the home so that a search warrant could be issued. The judge signed the search warrant at 6:00 a.m.; it was executed shortly after 7:00 a.m. and yielded methamphetamine and numerous items used in the manufacturing of methamphetamine.

In a standard bench order filed May 25, 2004, the trial court denied the motion to suppress. Appellants subsequently entered conditional pleas pursuant to Ark. R. Crim. P. 24.3, and this appeal followed.

Our review of a denial of a motion to suppress evidence is de novo, and we make an independent determination based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Marshall v. State*, 92 Ark. App. 188, 211 S.W.3d 597 (2005); *Mann v. State*, 357 Ark. 159, 161 S.W.3d 826 (2004).

Appellants assert first and third that there were no "exigent circumstances" pursuant to Ark. R. of Crim. P. 14.3 that necessitated a warrantless nighttime intrusion into their home. They also

argue that their federal and state constitutional rights were violated by the impermissible seizure resulting from the knock-and-talk procedure. We agree.

A warrantless entry into a private residence is presumptively unreasonable under the Fourth Amendment, and the burden is on the State to prove that the warrantless activity was reasonable. *Mann v. State, supra.* However, an officer may enter a home without a warrant if the State establishes an exception to the warrant requirement. *Baird v. State,* 357 Ark. 508, 182 S.W.3d 136 (2004). An exception to the warrant requirement exists where, at the time of entry, there are probable cause and exigent circumstances. *Id.* Probable cause is determined by applying a totality-of-the-circumstances test, and exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Id.* Exigent circumstances are those requiring immediate aid or action, and, while there is no definite list of what constitutes exigent circumstances, several established examples include the risk of removal or destruction of evidence, danger to the lives of police officers or others, and the hot pursuit of a suspect. *Mann v. State, supra; see also* Ark. R. Crim. P. 14.3. In evaluating whether exigent circumstances exist, we are to consider the extent to which the police had an opportunity to obtain a warrant, and whether it was foreseeable that the chosen police tactics might precipitate the kind of circumstances contemplated by Rule 14.3. *Mann v. State, supra.*

In denying appellants' motion to suppress, the trial court ruled as follows:

> This is the case where the officers involved established or determined or obtained probable cause to search the premises that were involved here about nine o'clock one night and about three and a half hours later, without a search warrant, entered the premises by force, removed the residents and sent them on their way to go stay somewhere else, and subsequently, about 5:30 or six o'clock in the morning, they got their search warrant.

> The — the contention was that exigent circumstances existed because there was probable cause to believe that the premises contained a methamphetamine lab and that a small child, a child, was in the premises.

There is no question that the officers had probable cause for the — to obtain a search warrant. However, there were no exigent circumstances. There [are] just no exigent circumstances that would justify breaking into the — forcibly entering the home at 12:30 in the morning without a warrant.

Exigent means an emergency, and three hours later is not — that doesn't sound like an emergency to me, especially since — and the justification given was they need time to assemble a crew. Well, this was in Rogers, wasn't like it was in the boondocks. So — and when the officers arrived at the premises, they didn't smell any chemicals and saw nothing that would indicate that there was any immediate danger to anyone.

I have found that — that if there is any poison flowing from that improper entry it doesn't taint the eventual seizure, and I'm going to deny the motion to suppress. And I'm denying — denying it because, one, the — based on the testimony I'm satisfied these officers were operating in good faith; and more particularly, is that they didn't see — they didn't search the residence when they entered, and — and nothing contained — and there was nothing from that entry that was included in the affidavit for the search warrant.

So the motion to suppress is denied, but I want to say that these officers ought not to be going out three hours later without more than what was present here and entering someone's house, because frankly, if they had — if they had encountered something that had been used to justify a search I would have suppressed it.

■ In this instance, the trial court determined that no exigent circumstances existed, and we agree with that finding. Officer Ray testified that he was concerned with the welfare of the minor located inside the home; however, he took no actions that were tantamount to a response to those exigent circumstances he thought existed. We note that Officer Ray testified that he did not type up his affidavit for a search warrant, which he estimated would have taken him "a couple of hours," due to his concern for the child located in the home; nevertheless, Officer Ray took approximately three and one-half hours to notify other officers and secure back-up. Under these circumstances, ample opportunity existed for the police to obtain a warrant. Furthermore, it was entirely foreseeable that appellants would not answer their door at

12:28 a.m., which would necessitate intrusion into the residence. Forced entry into the residence is not a tactic that comports with the Fourth Amendment and Article 2, Section 15 of the Arkansas Constitution. Accordingly, we hold that the trial court's determination that no exigent circumstances existed was proper.

██ The problem, however, lies with the trial court's determination that the officers acted in good faith in that they did not search the residence when they entered and included nothing from that entry in the affidavit for the search warrant. Based on the totality of the circumstances, we hold that the warrantless entry into appellants' home was illegal. Thus, the question becomes whether the evidence seized after appellants' seizure was obtained by exploitation of the illegal warrantless entry into the home or whether there was some intervening or attenuating event "sufficiently distinguishable to be purged of the primary taint." *See Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963); *Johnson v. State,* 363 Ark. 463, 215 S.W.3d 668 (2005); *Keenom v. State,* 349 Ark. 381, 80 S.W.3d 743 (2002).

██ Here, after the officers received no answer at the door of the residence, they forced entry and seized its occupants. The occupants were thereby forced to leave the residence. Two officers stayed at the residence to secure its premises until the search warrant was obtained some five hours later. A seizure occurred because a reasonable person would not have felt free to go about their way when the officers kicked in the door. This illegality continued even after the occupants were required to vacate their premises and did not end until execution of the search warrant that yielded narcotics because there was no break in time nor were there any other intervening events between the illegal warrantless entry into appellants' home and the execution of the search warrant. Therefore, the primary taint of the unlawful warrantless entry into the home had not been sufficiently attenuated or purged. *See Dendy v. State,* 93 Ark. App. 281, 218 S.W.3d 322 (2005). Therefore, we think it is clear that, although no evidence was seized during the illegal warrantless entry, the subsequent finding of evidence was the result of the exploitation of the initial illegal seizure. Under these circumstances, the fruits of the illegal seizure were poisoned by the officers' unlawful warrantless entry. *See id.* Accordingly, we reverse and remand the trial court's denial of the motion to suppress.

In light of our resolution of the suppression issue, we need not address appellants' remaining argument concerning the reliability of the confidential informants.

Reversed and remanded.

GLADWIN and GRIFFEN, JJ., agree.