Willie HOUSTON *v.* STATE of Arkansas

CR 88-194                                         771 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered May 22, 1989

8

*Ralph Cloar* and *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Tim Humphries*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This appeal from a conviction for first degree murder challenges two evidentiary rulings and the sufficiency of the evidence to support the conviction.

On the evening of March 2, 1988, Eddie Bell answered a knock at his front door. Shots were exchanged between Bell and the person at the door and Bell died from multiple gunshot wounds received in the exchange. A few minutes later the appellant, Willie Houston, was found injured on the parking lot adjacent to the emergency room at the University of Arkansas Medical Center. The appellant told medical personnel he had been shot and they notified the police.

Having learned of the homicide of Eddie Bell, the police asked the attending physician to save any bullet fragments he might retrieve in surgery. When surgery was performed, two bullets and some fragments were removed from the appellant, turned over to the police, and taken to the Arkansas State Crime Lab. A comparison test was performed and one of the bullets matched a .38 caliber revolver found next to Bell.

The police obtained a warrant for appellant's arrest and he was tried and convicted of first degree murder. As an habitual offender he was sentenced to a term of 99 years. It is from that conviction that appellant brings this appeal.

Appellant first argues that the trial court erred in denying a motion to suppress the bullets retrieved by surgery. The appellant contends on appeal that the surgery was performed in order to recover the bullets and the appellant was entitled to at least a hearing prior to any surgery. Appellant cites us to *Bowden* v. *State*, 256 Ark. 820, 510 S.W.2d 879 (1974), where the appellant had been brought to a hospital with a gunshot wound following a robbery and a murder. The police suspected the appellant and sought a search warrant to perform surgery to remove a bullet which appeared in an x-ray to match the gun fired at the robbers. We held that the removal of the bullet in that case would violate the fourth amendment.

10

■  Our case is immediately distinguishable. In *Bowden*, the operation was requested by the police, not the appellant, and was being sought over the appellant's objection. The more appropriate case for comparison is *Turner* v. *State*, 258 Ark. 425, 527 S.W.2d 580 (1975), where we held that an operation which may be invasive, which is not done at the direction of, or by prearrangement with any law enforcement officer, will not constitute any unreasonable search and seizure. This comports with the general rule that the exclusionary rule and the fourth amendment were not intended as a restraint upon the acts of private individuals but upon the activities of the government and its officials. 1 LaFave, *Criminal Procedure* § 3.1(h) (1984). Such searches will not implicate the fourth amendment unless the search by the private party has been done at the request or order of the government or in some way has been a joint endeavor with the government. *Id.*

Here, the evidence showed only that the removal of the bullets was done at the instigation of the appellant and the doctor with no direction or prearrangement for the surgery by the police. The appellant appeared voluntarily at the hospital, in obvious need of medical attention. Appellant was evaluated by the doctor and a decision to take appellant to surgery was made after that evaluation. The doctor talked to the police informally the night of the surgery and he testified they told him if he were to remove any bullets or fragments, to make the appropriate arrangements so the police could pick them up. He also testified that the operation was done for appellant's benefit and that appellant had given his consent after his injuries and the risks of surgery had been explained.

■  Two policemen had been called to the hospital that night, Officers Grogan and Ball. Grogan testified that he didn't know if appellant was even a suspect and he had gone to the hospital because it was standard policy to make a report of shooting victims. He had talked to the medical personnel only about the extent of appellant's injuries. Officer Ball had also talked to the medical personnel and stated he told them that if they needed to perform surgery and get the bullet out that the police needed the bullet. He stated he didn't ask them to perform surgery and at that time didn't know they were going to operate. Thus there is no indication the surgery was performed to

accommodate the police. The trial court was correct in denying appellant's motion for suppression.

Appellant's second point is that the trial court erred in ruling that a felony conviction more than ten years old could be used to impeach appellant's testimony. Under A.R.E. Rule 609(b), a conviction is not admissible "if a period of more than ten years has elapsed since the date of conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." The record is not entirely clear, but it appears that of three convictions ruled admissible by the court, one may have been beyond the ten year limit.

When the matter was discussed in conference, appellant's request to the trial court was not clear as to the specific dates involved. The trial court then examined the conviction record and made a determination that all three convictions were admissible. Appellant's counsel then stated he had no objection to the admissibility of all three. Appellant cannot agree to some action taken by the trial court and then seek review of that point on appeal. *Smith* v. *State*, 278 Ark. 462, 648 S.W.2d 792 (1983).

As his final point, appellant argues that the evidence was insufficient to support a conviction of first degree murder as it failed to support a showing of premeditation and deliberation or that appellant and not the victim was the aggressor.

We note initially that the objection below did not properly preserve the argument now made on appeal. A.R.Cr.P. 36.21(b) provides:

> (b) Failure to Question the Sufficiency of the Evidence. When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution *and at the close of the case* because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. [Amended by Per Curiam January 25, 1988, effective March 1, 1988.] [Emphasis supplied.]

This rule became effective March 1, 1988, and the trial in this case was in August 1988 so the rule was in effect at the time of the trial. Here, appellant made a motion for a directed verdict at the

close of the state's case but not at the close of the case. A renewal of the motion would have been to no avail in this case, however, as the evidence was more than sufficient to show premeditation and that the victim was not the aggressor.

Yolanda Washington, who was with the victim at the time of the shooting, testified that Bell had gone to the door in response to a knock. He had first put a pistol in his pocket which Ms. Washington said was always his custom when answering the door. He took the added precaution on this occasion of putting a second gun in the waistband of his pants. When Bell started to open the outside door an individual on the porch reached and opened the door and nudged Bell back with his forearm. The individual told Bell to "Get back there," and drew a pistol from the front of his pants. When Ms. Washington saw the individual draw the gun she slammed the inside door and then heard several shots.

The nature of the wounds to Bell and to appellant corroborated Ms. Washington's version of the incident. The doctor who conducted the autopsy testified that Bell had been shot three times in the head. Two were gunshot wounds to the forehead, one of them at a range of one to three inches. The third wound was from a shotgun blast which was from a distance of less than five feet to ten feet, depending on whether the shotgun was sawed off. Appellant, on the other hand, had two bullet wounds, one to the leg and the other to his arm.

There was adequate evidence from which the jury could have found that appellant had acted as the aggressor and with premeditation and deliberation.

AFFIRMED.