David REAGAN *v.* STATE of Arkansas

CR 94-237                                      885 S.W.2d 849

Supreme Court of Arkansas
Opinion delivered October 24, 1994

*Paul H. Lee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is a sufficiency of the evidence case. The appellant, David Reagan, appeals his judgment of conviction for first degree murder and his sentence of life imprisonment. Following his judgment of conviction, Reagan did not appeal to this court but rather filed a petition *pro se* for writ of habeas corpus in federal district court. Counsel for Reagan was appointed on that petition and because state remedies had not been exhausted in the form of an appeal, a motion for belated appeal was filed in this court on Reagan's behalf. This court treated that motion as one for a rule on the clerk and granted it.

Reagan's basis for lack of sufficient evidence is that the State failed to prove that under "circumstances manifesting cruel and malicious indifference to the value of human life," he knowingly caused the death of the victim who was under age 14. *See* Ark. Code Ann. § 5-10-102 (1987).[1] We decline to consider the argument, however, in light of the fact that Reagan failed to preserve the sufficiency argument for our review by appropriate motion. We, therefore, affirm the judgment of conviction.

The facts of the case are these. Sarah Binkard was the natural child of Renay Binkard. At the time of her death she was two years old. Reagan was Renay Binkard's boyfriend and lived in her home with her other children. On November 27, 1989, Sarah

---

[1] Act 683 of 1991 amended this statute to delete the requirement that death be caused under circumstances manifesting cruel and malicious indifference to the value of human life.

suffered a blow to her abdomen.[2] Later that day she stopped breathing and was taken to the Emergency Room at the Piggott Hospital where she was pronounced dead. She was examined by Dr. Jerry Muse, who observed other indications of trauma on her body in addition to the abdominal injury, including a bruise to her forehead, a bruise under her chin, and several bruises in the small of her back. There were also burns to each foot, later identified by Dr. Fahmy Malak, then State Medical Examiner, as cigarette burns. Her diaper was bloody as a result of the blow to her abdomen. Dr. Malak testified that the injury resulted in a ruptured intestine, which resulted in Sarah's death. He opined that the injury was caused by a blunt instrument like a fist or elbow.

Officer Jerry Brogden of the Arkansas State Police Department investigated the death and took several statements from Reagan. Initially, Reagan attributed the blow to Sarah's stomach to a fall from his front porch and later to an accidental fall where his knee hit her. In later statements, this changed, and he stated that the inflicted trauma had been caused by his pulling on a limb which broke and caused him to fall on Sarah. The State charged Reagan and Renay Binkard with first degree murder. Renay Binkard later pled guilty to permitting child abuse to occur. The charge against Reagan went to trial in June 1990.

The statements taken by Officer Brogden as well as the testimony of Dr. Muse and Dr. Malak formed the basis for the State's case against Reagan. There was also testimony by Reagan's son, David Chance Reagan, that he had seen his father put his knee on Sarah's stomach and force feed her. A neighbor, Vanessa Huckaby, who saw Sarah on the day of her death, testified that she appeared dazed and sick and that Reagan was acting "differently." A field services specialist for the State Department of Human Services, Wilma Rogers, testified that DHS had received a complaint of child abuse against Renay Binkard in December 1988. Two prisoners incarcerated with Reagan testified that he spoke disparagingly about Sarah.

At the conclusion of the State's case this colloquy transpired:

---

[2]Reagan asserts that the injury actually occurred on Sunday, November 26, 1989.

THE COURT: Call your first witness. Did you want the record to reflect the motion made?

DEFENSE COUNSEL: Yes, sir.

THE COURT: Made and denied.

The defense then put on its case which included in part testimony by Renay Binkard and Reagan. At the close of all evidence, there was this exchange:

THE COURT: Mr. Knauts [Defense Counsel], I'm going to show your motion for a directed verdict made and denied at the end of the State's case and again at the end of your case.

DEFENSE COUNSEL: Thank you, your Honor.

The jury then found Reagan guilty of first degree murder and assessed a penalty of life imprisonment. He was sentenced by the circuit court.

The State argues in its brief that defense counsel did not move for a directed verdict with enough specificity either at the close of the State's case or at the end of all the evidence. We agree. Indeed, in this case defense counsel failed to make any motion. In 1988, this court adopted Ark. R. Crim. P. 36.21(b), to be effective March 1, 1988, requiring the defense to move for a directed verdict both at the close of the State's case and at the close of all of the evidence in order to preserve an argument on sufficiency of the evidence on appeal. *See also Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989). The Reporter's Notes to that amendment stressed that this procedural step would bring the criminal rule more in line with our civil rule, Ark. R. Civ. P. 50, which similarly requires that the motion be made following the plaintiff's case and after all evidence has been presented. *Mitchell* v. *Goodall*, 297 Ark. 332, 761 S.W.2d 919 (1988). Rule 50 further requires that a motion for directed verdict state the specific grounds supporting it. *See Hooper* v. *Ragar*, 289 Ark. 152, 711 S.W.2d 148 (1986).

We conclude that what defense counsel did in this case did not qualify as a motion for directed verdict on behalf of his client. Accordingly, the issue of sufficiency of the evidence is not pre-

served for our review. This case is analogous to *Middleton* v. *State*, 311 Ark. 307, 842 S.W.2d 434 (1992), decided after the date of the alleged offense. In *Middleton*, defense counsel said he was making "the usual motions." But no specific motion was made. We stated that this did not suffice and that a more precise motion was required to challenge the sufficiency of the evidence and to apprise the trial court of the particular points raised. We then refused to consider the merits of that appeal. A comparable situation confronted the Court of Appeals in *Martin* v. *State*, 46 Ark. App. 276, 879 S.W.2d 470 (1994), also decided after the date of the charged offense. Defense counsel answered in the affirmative when the trial court asked: "Show the motions renewed?" That answer by defense counsel, the court correctly observed, did not amount to a motion for directed verdict.

■ Most recently, we established a bright line rule for specificity relating to motions for directed verdict:

> We draw a bright line and hold that a motion for a directed verdict in a criminal case must state the specific ground of the motion. Rule 36.21 of the Arkansas Rules of Criminal Procedure is to be read in alignment with Rule 50 of the Arkansas Rules of Civil Procedure. If a motion for directed verdict is general and does not specify a basis for the motion, it will be insufficient to preserve a specific argument for appellate review.

*Walker* v. *State*, 318 Ark. 107, 109, 883 S.W.2d 831, 832 (1994); *see also, Daffron* v. *State*, 318 Ark. 182, 885 S.W.2d 3 (1994).

It is obvious that defense counsel in the present case made no effort to move for a directed verdict himself or to cite the court to reasons which might support a motion. A directed verdict motion may not be used as a perfunctory device by counsel who are simply looking ahead to appeal. More is required than that and certainly more than was done in this case. We want to make it clear that this court is not deciding this case based on decisions handed down after the alleged offense, but cite this subsequent authority only to emphasize our continued and uniform position that, first, a motion for directed verdict be made and, secondly, that it be made with specificity.

■ Because Reagan's motions for directed verdict were

deficient and, in truth, nonexistent, the sufficiency argument is not preserved for our review. The record in this case has been read for other adverse rulings on motions and objections by Reagan which might form the basis for reversible error in accordance with Supreme Court Rule 4-3(h). No error was discovered.

Affirmed.