Randy Melvin BRUCE *v.* STATE of Arkansas

CR 06-496                                                    241 S.W.3d 728

Supreme Court of Arkansas
Opinion delivered October 26, 2006

*Paul J. Teufel*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Randy Melvin Bruce appeals the order of the Poinsett County Circuit Court denying his motion to suppress photographs, computer disks, 8-millimeter films, and VHS tapes seized from his home. Bruce entered a conditional plea of guilty to one count of rape, pursuant to Ark. R. Crim. P. 24.3(b), and was sentenced to a term of forty years' imprisonment in the Arkansas Department of Correction. On appeal, he now argues that the trial court erred in denying his motion to suppress evidence on the basis that it was obtained in violation of his constitutional rights, as a result of his wife searching his things and turning them over to law-enforcement officers. Additionally, Bruce argues that an officer's action of viewing the materials prior to the issuance of a search warrant also constituted an illegal search. We find no error and affirm.

In the early morning hours of May 22, 2005, Investigator Joey Martin of the Poinsett County Sheriff's Office received a call requesting that he go to a home on Raby Road to investigate items discovered by Tomasina Bruce, Appellant's wife, that she described as child pornography. When Investigator Martin arrived at the home, Mrs. Bruce handed over several items that she said belonged to her husband. The items included nude photographs of Mrs. Bruce's granddaughter and great-niece. Mrs. Bruce also turned over some VHS tapes, 8-millimeter films, and computer disks. Mrs. Bruce told Investigator Martin that she thought her husband was having an affair, so she searched the house and found these items that she believed Bruce had hidden from her. According to Mrs. Bruce, she located the majority of the items on a shelf in a closet located in a home office, while the computer disks were sitting atop a gun safe in the same room.

When Investigator Martin returned to his office, he viewed the materials and thereafter sought and received a search warrant. In his affidavit for the warrant, Investigator Martin detailed that most of the tapes turned over by Mrs. Bruce revealed nude pictures of Mrs. Bruce's granddaughter and grandson. In addition, he stated in the affidavit that two of the 8-millimeter films showed Bruce exposing himself to the grandchildren and penetrating the granddaughter with his finger and penis.

Bruce was subsequently arrested and charged on July 27, 2005, by felony information, with fifty counts of engaging a child in sexually explicit conduct, fifty counts of pandering-possessing material depicting sexually explicit conduct involving a child, fifty

counts of employing a child under the age of seventeen in a sexual performance, two counts of rape, and two counts of sexual assault in the second degree. On September 1, 2005, he filed a motion to suppress the photographs, tapes, films, and computer disks, arguing that the evidence was seized as the result of an unlawful search and seizure.

At a hearing on the motion to suppress held on November 10, 2005, Bruce argued that he had a reasonable expectation of privacy in his house and that Mrs. Bruce admitted that she was snooping through his things when she discovered the photographs and tapes. According to Bruce, his wife did not have the authority to search his personal items or to consent to a search of his items by Investigator Martin. The State countered that Bruce had no reasonable expectation of privacy in the items searched, as they were kept in a doorless closet in a room sometimes used by Mrs. Bruce. The State further argued that Mrs. Bruce had both apparent and actual authority to consent to the search by authorities. The trial court agreed with the State, ruling that Mrs. Bruce was not a state actor when she searched her husband's things. The court further ruled that Mrs. Bruce had the authority to turn over the items she discovered and that Investigator Martin's actions of viewing the tapes and computer disks did not constitute a search.

After the trial court denied his motion to suppress, Bruce entered a conditional plea of guilty to one count of rape in violation of Ark. Code Ann. § 5-14-103 (Supp. 2003).[1] He was sentenced as stated above and now pursues an appeal of the denial of his motion to suppress.

On appeal, Bruce argues that his wife could not consent to a search of his property, and because she lacked both apparent and actual authority to consent, the subsequent search of his items violated his rights under the Fourth Amendment to the United States Constitution and article 2, section 15, of the Arkansas Constitution. In addition, Bruce argues that Investigator Martin's actions of viewing the materials turned over by Mrs. Bruce were an unlawful search conducted prior to his obtaining a search warrant and should be suppressed. Thus, according to Bruce, even if this court determines that Mrs. Bruce had apparent authority to turn his things over to law enforcement, the State exceeded the scope of

---

[1] The remaining charges were dismissed.

the private search by viewing the materials and everything, except the four photographs, should have been suppressed.

The State counters that Bruce's argument is procedurally barred on the basis that he failed to demonstrate how he was prejudiced by the admission of the evidence. In support of its argument, the State relies on *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000), where this court held that the appellant was not prejudiced by a denial of a motion to suppress where the statement he sought to have suppressed was never introduced at trial. We disagree with the State that Bruce's argument is procedurally barred and note that its reliance on *Ferguson* is inapposite. Thus, we now turn to the merits of Bruce's arguments.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances. *See Dickinson v. State*, 367 Ark. 102, 238 S.W.3d 125 (2006). This court reverses only if the circuit court's ruling denying a motion to suppress is clearly against the preponderance of the evidence. *Id.*

We begin our review by noting that the trial court correctly determined that Mrs. Bruce was not acting as a state actor at the time she searched her husband's belongings. In addressing a similar issue, this court has stated:

> For a search to be implicated under our Criminal Code, the search must constitute an "official intrusion." *See* A.R.Cr.P. 10.1(a) and Commentary to Article IV. "The search and seizure clauses are restraints upon the government and its agents, not upon private individuals." *Walker v. State*, 244 Ark. 1150, 429 S.W.2d 121 (1968). The general corollary to this proposition is that the exclusionary rule is not intended as a restraint upon the acts of private individuals. Such searches will not implicate the Fourth Amendment unless the search by the private party has been done at the request or direction of the government, or in some way has been a joint endeavor with the government. *Houston v. State*, 299 Ark. 7, 771 S.W.2d 16 (1989), citing to 1 LaFave, *Criminal Procedure* 3.1(h) (1984). Where a state official has no connection with a wrongful seizure, there is no basis for exclusion. *Id.*

*Winters v. State*, 301 Ark. 127, 130–31, 782 S.W.2d 566, 568 (1990).

Clearly, any argument by Bruce that his wife's actions constituted an impermissible search is without merit, as she was not a state actor and there was no resulting constitutional violation.

As such, Bruce's argument that his wife lacked authority to turn the items she discovered over to the authorities is without merit. We next turn to Bruce's argument that the police exceeded the scope of his wife's search by viewing the films, tapes, and disks. We find no merit in this argument either.

Pursuant to Ark. R. Crim. P. 11.1(a), an officer may conduct searches and make seizures without a search warrant if consent is given to the search. Further, Ark. R. Crim. P. 11.2(c) provides that a person who, by ownership or otherwise, is apparently entitled to give or withhold consent may consent to such a search. Searches based on voluntary third-party consent can be considered reasonable. *See United States v. Matlock*, 415 U.S. 164 (1974). Under *Matlock*, however, for the consent to be valid, the party giving the consent must have "common authority" over the premises. *Id.* at 171. The determination of third-party consent, like other factual determinations relating to searches and seizures, must be judged against an objective standard. *Hillard v. State*, 321 Ark. 39, 44, 900 S.W.2d 167, 169 (1995) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). The test is: "[W]ould the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* In the present case, the question is whether under the facts as he knew them, Investigator Martin believed that Mrs. Bruce had authority over the materials she turned over to him.

Investigator Martin testified that the home belonged to Bruce and his wife. He stated that the wife admitted that she was snooping through her husband's belongings, searching for evidence of an affair and found the photos, tapes, and other items that she assumed belonged to her husband. Mrs. Bruce testified that she found the items in a room in the home she owned with her husband. She stated that she sometimes used the room and the computer in it. The majority of the items she found were on a shelf in a doorless closet in that room. According to Mrs. Bruce, she also found some computer disks laying on top of a gun safe in that same room.

In *Matlock*, 415 U.S. 164, 172 n.7, the United States Supreme Court commented:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of

property, with its attendant historical and legal refinements, *see* *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Applying this principle to the facts of this case it is apparent that Mrs. Bruce had common authority over the items she discovered in a part of their home jointly accessed and controlled by her.

This reasoning is in line with our previous decision in *Hillard*, 321 Ark. 39, 900 S.W.2d 167. In that case, the appellant was sharing an apartment with Amelia Anderson. The apartment belonged to Anderson's mother, Betty Sue Webster. Officers investigating the appellant in connection with two murders sought and received permission from Anderson to search the apartment. During the search, officers discovered a duffel bag belonging to the appellant and inside found two guns. The appellant sought suppression of the guns, arguing that Anderson did not have the apparent or actual authority to consent to a search of his duffel bag. This court rejected that argument, noting:

> In sum, the record reflects the state established that Anderson had common authority, permitting her to authorize the officers to search the premises. Concerning the scope of the consent given, both Anderson and her mother had common authority over the premises, and it is uncontroverted that they gave their unqualified and unrestricted consent to search the entire premises, including the room where Hillard's duffel bag was found. Anderson clearly stated that she gave the officers the right to search Hillard's as well as her things in the bedroom which they jointly shared. Whether Hillard actually authorized anyone to open or consent to the search of his bag is unimportant.

*Id.* at 44–45, 900 S.W.3d at 169–70.

Just as we decided in *Hillard*, the evidence here demonstrates that Mrs. Bruce had the authority to consent to an unrestricted search of the materials that she turned over to Investigator Martin.

Our conclusion is further supported by a recent decision of the Indiana Supreme Court in *Lee v. State*, 849 N.E.2d 602 (Ind. 2006). There, the appellant and his fiancée lived in a house owned by the appellant's mother. The appellant operated a photography studio in the basement of the house. When his fiancée discovered some VHS tapes in the basement, she viewed two or three of them and discovered a woman changing clothes and realized that the images were taken in the studio's changing room. At that point, the fiancée took sixteen tapes to the local authorities. She told the officers that she lived in the house and that her fiancé had secretly recorded women undressing in the studio. Two of the officers then viewed several of the tapes.

On appeal, the appellant argued that the officers' actions of viewing additional tapes constituted an impermissible search because he had a protected privacy interest in the tapes and none of the exceptions to the warrant requirement were applicable. In making his argument, the appellant relied on *Walter v. United States*, 447 U.S. 649 (1980), and *United States v. Jacobsen*, 466 U.S. 109 (1984). The Supreme Court of Indiana rejected the appellant's argument, ruling that while the appellant held a cognizable privacy interest in the tapes, because the tapes were kept in a home he shared with his fiancée, she had actual authority over the tapes and therefore could consent to the search of those tapes. In reaching this conclusion, the court noted that Melissa shared the house with the appellant and had full access to all the rooms in the house, including the areas where the appellant kept the tapes. The court explained:

> Actual authority does not turn solely on whatever property interest the third party may have in the property. It can arise from "mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171, 94 S.Ct. 988. This is explained on the ground that the consenting party could permit the search "in his own right" and also that the defendant "assumed the risk" that a co-occupant might permit a search. *Id. See also* 1 *LaFave, supra* at § 1.8(b), p. 237 ("when one subjects her property to the joint or exclusive control of another, she has thereby assumed the risk that the other person will turn that property over to the police and allow the police to examine it further.") Accordingly, by living with Melissa and taking no steps to deny Melissa access to the tapes, David assumed the risk that Melissa would take the tapes to the police station.

*Lee*, 849 N.E.2d at 606 (footnote omitted).

■ This reasoning is certainly applicable in the instant case. Here, Bruce and his wife cohabitated in the home. Mrs. Bruce had complete access to the entire house, including the room where the items were found, as evidenced by her testimony that she sometimes used the room. Most importantly, Bruce took no steps to prevent his wife from obtaining the materials, other than hiding some of them on a shelf in a doorless closet.

We are further persuaded by the Indiana Supreme Court's distinction of *Walter*, 447 U.S. 649, now relied on by Bruce. In order to understand the crucial distinction, it is necessary to briefly explain this case. In *Walter*, a private party opened a misdirected carton, found rolls of motion picture films that appeared to be contraband, and turned the carton over to law enforcement. Later, without obtaining a warrant, the law-enforcement agents obtained a projector and viewed the films. The Court found that because the private party had not actually viewed the films, the actions of the government in viewing them was a "significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search." *Id.* at 657.

In addressing the appellant's argument regarding the applicability of *Walter*, the Indiana court concluded that the cases were inapplicable, as those cases involved private parties that had no authority to consent to the searches undertaken by the government actors. Likewise, our review of *Walter* makes it clear that Bruce's reliance on this case is misplaced. This is not a case where the police exceeded the scope of a private party's search. The case at hand is one where the police examined the materials given to them by a third-party who had authority to consent to a search of the materials.

Before leaving this point, we note that Bruce's reliance on *Runyan v. State*, 275 F.3d 449 (2001), is also unavailing, as that case is distinguishable from the instant one. In *Runyan*, a husband and wife were divorcing. The wife, in retrieving some of her possessions from the marital home, discovered child pornography in various forms. The wife viewed some of the materials but turned over to authorities all the things she had found. Thereafter, the police conducted a more thorough review of many of the materials that eventually led to issuance of a search warrant. In determining that the police's prewarrant search of the materials constituted an impermissible expansion of the wife's search, the court stated that, "[t]he police could not have concluded with substantial certainty

that all of the disks contained child pornography based on knowledge obtained from the private searchers, information in plain view, or their own expertise." *Id.* at 464.

The court in *Runyan*, however, was not faced with a situation involving two co-habitating spouses who had joint authority over the premises. In *Runyan*, the wife and husband were divorcing, the wife no longer had access to the house, and, in fact, broke into the house at the time that the items were discovered. Thus, the spouse in *Runyan* had no authority, apparent or actual, to consent to the search of the materials. Accordingly, we cannot say that the trial court erred in denying Bruce's motion to suppress the materials in this case.

Affirmed.